UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

CHARLESTON DEPRIEST, as Father
and Next Fried of C.B., a minor, et al.                                      PLAINTIFFS

VS.                                                     CAUSE NO. 3:10-cv-00663-CWR-FKB

CHRISTOPHER EPPS, in his official capacity as
Commissioner of the MDOC, and TOM BURNHAM,
in his official capacity as Superintendent of the
Mississippi State Department of Education                                    DEFENDANTS

## ORDER APPROVING SETTLEMENT

Before this Court is the Joint Motion of the parties to approve a settlement proposal that would bind class members and resolve the issues set forth in the Complaint [Docket No.1]. Having considered the pleadings, submissions and arguments of counsel and the testimony of certain class members, the Court finds that the settlement is fair, reasonable and adequate, and therefore is APPROVED.

### FINDINGS

1.      The Plaintiffs instituted this action on November 16, 2010, alleging barbaric, unconstitutional conditions in the Walnut Grove Youth Correctional Facility ("WGYCF"), on behalf of a putative class of all individuals who now or in the future will be confined at WGYCF. WGYCF is a Mississippi Department of Corrections ("MDOC") prison for young men who are ages 13-22 and have been convicted as adults in criminal court. Miss. Code Ann. § 47-5-943 (West 2007). According to the Complaint, "[s]ixty-seven percent of the young men at WGYCF are incarcerated for committing non-violent offenses." [Docket No. 1], at ¶ 1. The Plaintiffs seek declaratory relief, preliminary and permanent injunctive relief that will remedy the unlawful

conditions, practices and policies of WGYCF, and an order from this Court that WGYCF provide the class members with required care, education and living conditions that conform to the dictates of the United States Constitution. They also seek reasonable attorneys' fees and costs for having to file this action.

2. WGYCF is owned by the Walnut Grove Development Authority ("WGDA"). The WGDA contracts with a private, for-profit company, the GEO Group, Inc. ("GEO"), to operate the WGYCF. GEO assumed operations of WGYCF in August 2010, after acquiring and merging with Cornell Companies, Inc. ("Cornell"), which had operated the Facility since 2003. Following GEO and Cornell's merger, key personnel, policies and training at WGYCF did not change substantially. The mental health and medical staffs at WGYCF are employed by Health Assurances as contract staff; they are not employees of GEO or the State. MDOC, through its commissioner, has the ultimate responsibility for ensuring that all prisons under its jurisdiction operate in compliance with state and federal law. Although the Complaint named several defendants, all but the Commissioner of Corrections and the Superintendent of the Mississippi Department of Education have been released since "[t]he State Defendants have the authority to provide complete relief on Plaintiffs' claims." [Docket No. 59] at ¶2.

3. Counsel for Plaintiffs began investigating allegations of unconstitutional actions by prison officials in 2006. Those allegations, however, far exceeded mere breaches of the United States Constitution; the investigation uncovered pervasive violations of state and federal civil and criminal law and a wholesale lack of accountability by prison officials. For example, staff of the WGYCF and those responsible for overseeing and supervising the youth engaged in sexual relationships with the youth; they exploited them by selling drugs in the facility; and the

youth, "handcuffed and defenseless[,] have been kicked, punched, and beaten all over their bodies." Complaint, at ¶ 2. They are frequently subjected to chemical restraints for the most insignificant of infractions and are denied necessary medical care. And although many of the offenders have been ordered to finish their education, "the facility prevents most youth from accessing even the most basic education services." *Id*.

    4.    The investigation culminated with the filing of the instant action. Even prior to filing the lawsuit, however, the parties began settlement negotiations, each having retained nationally recognized experts in the areas of protection from harm, mental health and medical care. These experts conducted a comprehensive examination of WGYCF, which included a review of files, policies and procedures, conducting interviews of facility staff and imprisoned individuals, and tours of the facility. Many of the allegations of the Complaint were substantiated, and other documented actions that would not meet constitutional standards also were discovered. Based on information obtained by the experts and through extensive negotiations, the parties developed one Memorandum of Agreement and one Consent Decree concerning conditions for individuals in MDOC custody who are age 17 and under ("under 18 Agreements") and one Memorandum of Agreement and one Consent Decree governing conditions in WGYCF ("WGYCF Agreements"). The parties submitted the proposed agreements to the Court on February 3, 2012, for its consideration and approval [Docket No. 68].

    5.    Pursuant to an order of this Court, *see* [Docket No. 69], the parties provided notice to class members of the proposed settlement and set a hearing and a deadline by which the persons could file objections. *Id*. Having received no objections, the Court conducted the fairness hearing on March 22, 2012, and allowed the parties to provide testimony and to submit

evidence and argument in support of their request for entry of the proposed consent decrees.

6. During the hearing, the Court received the arguments of counsel for the parties, testimony of certain class members, and statements from two parents of children who served sentences at WGYCF. Additionally, the Court reviewed all pleadings filed in this action, including a Report of Investigation of the Walnut Grove Youth Correctional Facility Walnut Grove, Mississippi, conducted by the United States Department of Justice, Civil Rights Division under the authority of the Civil Rights of Institutionalized Persons Act, 42 U.S.C. § 1997 ("CRIPA"), and the Violent Crime Control and Law Enforcement Act of 1992, 42 U.S.C. 14141 [Docket No. 74-1]. The Report was issued only two days before the hearing, and on that date Thomas E. Perez, Assistant Attorney General, delivered a letter to Governor Phil Bryant with a copy of the report.

7. The Report confirmed many of the allegations that brought counsel for Plaintiffs to pursue this action. The Report also documented many of the issues and findings that were uncovered while the parties were engaged in the negotiations to resolve the claims. More pointedly, the Report concluded that the "**State of Mississippi is deliberately indifferent to the constitutional rights of young men confined at WGYCF. Evidence discovered at WGYCF reveals systemic, egregious and dangerous practices exacerbated by a lack of accountability and controls.**" [Docket No. 74-1]  (emphasis added). The DOJ's findings, together with the testimony of the witnesses and the arguments of counsel, leave this Court with the firm and unshakeable conviction that the Consent Decrees must be entered WITHOUT DELAY. Those youth, some of whom are mere children, are at risk every minute, every hour, every day. Without Court intervention, they will continue to suffer unconstitutional harms, some of which

are due to aberrant and criminal behavior.  Nothing has curtailed actions of the staff and indifference of management officials to the constant violations, even though the parties and their experts have been monitoring, investigating and conducting on-site visits constantly since before the lawsuit was filed and during the pendency of this action.  Moreover, the fact that the DOJ dared to begin its investigation in October 2010 has not caused the defendants to transform the facility into one that complies with the United States Constitution.  But even more astounding is the fact that the notice of the fairness hearing itself did not cause the defendants to change course.  The testimony established that only two days before the hearing, the facility remained so understaffed that a teenage offender was brutally attacked by several other offenders while only one staffer was on site.  As of the date of the hearing, according to testimony, management has done nothing to address staffing issues.  WGYCF has allowed a cesspool of unconstitutional and inhuman acts and conditions to germinate, the sum of which places the offenders at substantial ongoing risk.

8.     The Court understands completely why the DOJ would conclude that the sexual misconduct occurring at WGYCF, including "brazen" staff sexual misconduct and brutal youth-on-youth rapes, was "among the worst that we have seen in *any facility anywhere* in the nation."  *Id*. (emphasis added).

9.     All evidence establishes that the youth are routinely subjected to excessive force by the prison officials and that the staff fails consistently to report and investigate these claims, even though staff members have witnessed many of the acts and the offenders, despite facing threats of retaliation, have reported incidents.  Given that the facility employs correctional staffers affiliated with gangs, no more can be expected.  Moreover, there is virtually no evidence

that these claims or any of the infractions, which clearly violate state and federal law, are forwarded to law enforcement for investigation. In fact, there is no evidence that the allegations of abuse and misconduct even have been forwarded to the Mississippi Department of Human Services, which has the responsibility to investigate allegations of abuse against children.

      10. The misconduct is widespread and frequent, and WGYCF is deliberately indifferent to the serious and substantial risk of harm to which these youth are subjected. And to add one final insult to these injuries, State officials repeatedly failed to monitor the contracts with GEO and simply rewarded the company by either extending or offering new contracts, or by not revoking the existing contract despite "systemic, egregious, and dangerous practices exacerbated by a lack of accountability and controls." [Docket 74-1]. State officials are "aware of and disregard an excessive risk to youth health and safety." *Id. See, e.g.,* Complaint at ¶ 30 ("[The Commissioner receive[d] reports regarding operations at WGYCF, and has knowledge of all the conditions described in the complaint."). They have been derelict in their duties and remain deliberately indifferent to the serious medical and mental health needs of the offenders. The sum of these actions and inactions by WGYCF, WGDA, the State, the Department of Corrections, GEO and Health Assurance, L.L.C., paints a picture of such horror as should be unrealized anywhere in the civilized world. Court intervention, as proposed by the parties, is undoubtedly necessary.

      11. The settlement agreement "secures an adequate advantage for the class in return for the surrender of litigation rights against the defendants." See *In re Katrina Canal Breaches Litigation*, 628 F.3d 185, 196 (5th Cir. 2010) (quoting 4 Alba Conte & Herbert Newberg, Newberg on Class Actions § 11:46); *Reed v. Gen. Motors Corp.*, 703 F.2d 170, 172 (5th Cir.

6

1983).  Equally important to the Court is the fact that this agreement does not "bar[ ] a member of the Plaintiff class from bringing an individualized suit seeking damages or prospective relief under state and/or federal law."  Nor does the agreement in any way inhibit state and federal authorities from pursuing breaches of state and federal statutes, including criminal law.  Certainly, where there is evidence of such violations, law enforcement has the authority, duty and obligation to seek justice.  But law enforcement cannot respond unless and until they are notified.  Moreover, nothing within these Consent Decrees obviates the duty of the authorities to make such referrals to the appropriate state and federal agencies and investigative units.  And finally, nothing about the agreement alters the requirements of the Prison Litigation Reform Act.

12. Approving the Consent Agreement brings this matter to conclusion and gives the youthful offenders and victims immediate relief from further unconstitutional actions.  The State's cooperation in crafting the agreement assures that the State limits its exposure and the significant expenses that would be incurred with prolonged litigation.

13. The Court appreciates the fact that the terms of the settlement agreement and consent decrees were reached after months of exhaustive investigation and non-collusive negotiation, both of which began even before the lawsuit was filed.  The results reached fall within the range of possible relief, and there are no obvious deficiencies in the terms that have been proposed.  In fact, the Consent Decrees address and seek to rectify the issues raised in the Complaint, the matters uncovered during discovery, the testimony received at the fairness hearing and the matters addressed by counsel in their arguments requesting approval.

The Consent Decrees, which have been proposed and attached hereto, are hereby APPROVED AND ENTERED by the Court.

SO ORDERED, ADJUDGED, AND DECREED this Twenty-Sixth day of March 2012.

/s/ *Carlton W. Reeves*
Hon. Carlton W. Reeves
U.S. DISTRICT COURT JUDGE