THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

| | | |
|---|---|---|
| C.B., by and through his next friend,<br>Charleston DePriest, et al. | ) | |
| | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | CLASS ACTION |
| | ) | Civil Action No. 3:10cv663 |
| WALNUT GROVE CORRECTIONAL<br>AUTHORITY, et al. | ) | |
| | ) | |
| Defendants. | ) | |

## CONSENT DECREE

On or about November 16, 2010, Plaintiffs filed the above-captioned suit asserting constitutional and statutory challenges to conditions in the Walnut Grove Youth Correctional Facility. Plaintiffs and the Mississippi Department of Corrections stipulate and agree to the following provisions in partial resolution of the litigation. This Consent Decree contains provisions related to a settlement subclass comprised of all individuals who are now or in the future will be imprisoned in the Walnut Grove Youth Correctional Facility.

### I. Introduction.

(1) In order to resolve the allegations in the Complaint related to protection from harm and violence, excessive use of force, punitive isolation, and inadequate medical care with regard to

1

individuals who are now or in the future will be imprisoned in the Walnut Grove Youth Correctional Facility ("WGYCF"), the parties have entered into this Consent Decree.

(2) The parties agree to a settlement subclass comprised of all individuals who are now or who in the future will be imprisoned in the WGYCF. The terms of this Consent Decree apply only to this subclass and only to the WGYCF, and do not follow a Plaintiff who is transferred, discharged, or otherwise leaves WGYCF.

(3) The Defendant in this lawsuit is Commissioner Christopher Epps, in his official capacity as Commissioner of the Mississippi Department of Corrections ("MDOC"). This Consent Decree refers to actions and inactions that will be undertaken by Commissioner Epps, his staff and contractors under his direction. For ease of reference only, this Consent Decree refers to "MDOC" through this Agreement. The Parties intend for this Agreement to bind Commissioner Epps and his assigns.

(4) The term "Walnut Grove Youth Correctional Facility" or "WGYCF" hereinafter refers to the correctional facility located in Leake County, Mississippi as provided for in Miss. Code Ann. § 47-5-943 (Rev. 2007) and located at 1650 Highway 492, Walnut Grove, Mississippi 39189. The terms of this Consent Decree apply to the facility located at this address, regardless of whether MDOC and/or the Mississippi Legislature change the name of the facility.

(5) The parties stipulate that nothing in this Consent Decree constitutes either an admission of liability, or any evidence of liability, with respect to suits for damages or any claims asserted against the named Defendants with respect to inmates who are housed, were housed, or may be housed in the future, at the Walnut Grove Youth Correctional Facility.

2

(6) Nothing in this Consent Decree will prevent the State of Mississippi and/or MDOC from modifying the mission of, or closing WGYCF, or developing alternative community placements for the persons currently in the facility as set forth herein.

(7) This Consent Decree is not intended to have any preclusive effect except between the parties. The parties acknowledge that the remedies contained in this agreement are not necessarily appropriate for facilities other than the WGYCF as described in this Consent Decree.

(8) Individuals who are not class members are not third-party beneficiaries of this agreement and may not assert any rights under this Consent Decree.

## II. Care Required by the Constitution and Federal Statutes.

The purpose of this Consent Decree is to protect certain constitutional and federal statutory rights of individuals who are now or in the future will be imprisoned at WGYCF. The terms and requirements of this Consent Decree will be interpreted to be consistent with the remedial measures necessary to protect these rights of the prisoners, and consistent with applicable federal law. The terms of this Consent Decree are applicable only to WGYCF.

## III. Substantive Remedial Measures.

WGYCF will be operated and maintained by MDOC, or by a contractor retained by MDOC, in accordance with the following conditions:

### A. Classification and Housing System.

(1) MDOC will utilize a classification system that ensures prisoners are appropriately and safely housed within WGYCF.

3

**B. Protection from Harm.**

(1) At all times, prisoners will be provided with reasonably safe living conditions and will be protected from violence and other physical or sexual abuse by staff and other prisoners.

(2) MDOC will ensure that there are sufficient numbers of adequately trained direct care and supervisory staff, and sufficient numbers of professional staff. Within 90 days of the Court's approval of this Consent Decree, MDOC will develop and implement a staffing plan for direct care, supervisory, and professional staff to ensure that prisoners are adequately supervised and protected from harm and that prisoners have adequate access to medical services and adequate time out of their cells.

(3) Mechanical, physical or chemical restraints such as O.C. spray, pepper spray and mace will not be used to punish prisoners. If any restraint is necessary, the force must be the minimum amount required to safely contain the prisoners, and the restraints must be removed as soon as they are no longer necessary. Except in emergency circumstances, no prisoner should be subject to restraints until staff have first attempted verbal de-escalation techniques.

(4) Physical force and pain aversion behavior management techniques will not be used to punish prisoners. If physical force or pain aversion behavior management techniques are necessary, the force must be the minimum amount required to safely contain the prisoner. Except in emergency circumstances, no prisoner will be subject to physical force until staff have first attempted verbal de-escalation techniques.

(5) Except in exigent circumstances where no delay is possible because of the risk of bodily injury or serious damage to property creating a threat to security or except when totally impracticable, use of force will be captured on an audio-visual recording. MDOC will provide sufficient

4

audio-visual recording equipment at WGYCF to ensure that use of force as specified above will be recorded. The summary use of force reports will be provided to Plaintiffs' counsel on a monthly basis, and copies of videotapes will be available for inspection by Plaintiffs' counsel. If the use of force was not recorded, the use of force report must document why a recording was not made.

(6) Except in exigent circumstances where no delay is possible because of the risk of bodily injury or serious damage to property creating a threat to security, or except when totally impracticable, the Shift Commander or Warden will be notified and his or her consent obtained before force is used. Except in emergency circumstances, the Shift Commander or Warden will visit the prisoner before consenting to the use of force, to determine if force is necessary. A log will be maintained recording the efforts made to obtain the presence of the Shift Commander or Warden and a mental health professional prior to the use of force. These logs will become part of the monthly reports referred to in Section III B(7) below.

(7) All physical interventions, including use of force and mechanical and chemical restraints, must be documented in writing. The written documentation will include a detailed description of the physical intervention and the verbal de-escalation attempt(s) that occurred prior to the intervention. MDOC will use this documentation to review each physical intervention and to analyze patterns of use of force and restraint in an effort to reduce such incidents.

(8) Each use of force will be reviewed pursuant to MDOC's use of force policy and standard operating procedures.

(9) MDOC will develop protocols and procedures to ensure the involvement, where possible, of a mental health professional prior to use of force on prisoners with Serious Mental Illness, as defined in this Consent Decree.

5

(10) MDOC will develop policies and procedures that will limit the use chemical restraints. Chemical restraints will not be used as a punishment or to gain compliance. Chemical restraints may only be used to prevent seriously bodily injury or serious damage to property creating a threat to security. Only staff who have been trained on the appropriate use of chemical restraints may regularly carry chemical restraints on the living units.

(11) Issuance of restraint equipment will be documented in a bound Restraint Equipment Log Book. Staff members who are issued restraint equipment will initial in the appropriate section of the Log Book when checking equipment out of storage. The inventory number, name of the equipment, time in, and time out should be noted in the Log Book. Containers of chemical restraints that have been signed out for a shift will be weighed at the beginning and conclusion of that shift by the Shift Supervisor or his designee. The inventory numbers and weight of the containers will be documented in the Log Book.

(12) All prisoners who have been exposed to chemical restraints will be immediately removed from the contaminated area, will promptly be permitted to shower, and will be examined by medical staff to see if transport to the clinic is needed. Any contaminated living area will be decontaminated before a prisoner is returned to it. If emergency circumstances create an imminent threat to security and prevent staff from immediately removing prisoners from contaminated areas, MDOC will promptly provide prisoners who have been exposed to the chemical agents with an adequate supply of appropriate decontaminating agents.

(13) MDOC will not utilize, direct, or allow prisoners to enforce rules or impose discipline on other prisoners.

(14) MDOC will take reasonable steps to protect prisoners at WGYCF from verbal abuse and

6

harassment. MDOC will develop policies, procedures, and practices that protect prisoners from abuse, harassment, and punishment on the basis of their actual or perceived sexual orientation, gender identity, and gender non-conformity.

(15) MDOC will prohibit staff from forcing prisoners at WGYCF to engage in physical exertion that inflicts pain or discomfort, for example the practice of forcing prisoners to "alligator walk" and to "duck walk."

### C. Long-Term Cell Confinement.

(1) MDOC will not subject prisoners to long-term cell confinement except in conformity with this Consent Decree. For purposes of this agreement, "cell confinement" means confinement to a cell for more than twenty-one hours a day. "Long term" with respect to cell confinement means confinement for more than sixty days.

(2) Prisoners may be held in long-term cell confinement only if:

    a. they have inflicted serious physical injury on another while incarcerated;

    b. they are actively involved in disruptive gang activity;

    c. they have escaped or attempted to escape from within a security perimeter or while under direct supervision;

    d. they have committed a felony while on escape from a community correctional facility; or

    e. the Commissioner or his designee determines, based on specific objective criteria set forth in writing, that there is a significant risk that the prisoner will cause physical injury to prison staff, other prisoners, or members of the public if he is housed in general population, even at the highest security level.

(3) Prisoners will not be held in long-term cell confinement for the following reasons:

7

a.  solely on their classification scores or for refusing to work or participate in programs;

b.  solely because they escaped from a youth facility or community correctional facility;

c.  solely because they are subject to a felony detainer, even if for a serious crime, from another jurisdiction;

d.  solely because they have tested positive for marijuana; or

e.  solely because they need protective custody. Prisoners needing protection will be housed and accorded access to visits, canteen, and other privileges consistent with their custody levels.

(4) Every 90 days, the classification committee will reconsider whether any prisoner who has been placed on long term cell confinement should be reclassified and returned to the general population. (5) For the duration of this Consent Decree, MDOC will maintain and provide to Plaintiffs' counsel a current list of all WGYCF prisoners placed in long-term cell confinement with the date of and reason for placement, and the date of last review.

**D. Programming and Behavior Management.**

(1) MDOC will revise the Regimented Inmate Discipline Program to remove the paramilitary elements of the program.

(2) MDOC will develop a behavior management policy that incorporates graduated sanctions for rule violations, and positive incentives for good behavior.

(3) Except as limited by acceptable disciplinary procedures and punishment or a specific threat to safety, the norm will be that prisoners will be allowed out of their cells most of the hours of the day, including access to at least one hour a day of outside recreation, weather permitting.

8

**E. Disciplinary Due Process and Grievances.**

(1) MDOC will revise, if needed, its disciplinary procedures to ensure that prisoners receive adequate due process before the imposition of disciplinary sanctions (including rule violation reports) that would affect a prisoner's ability to earn the following: Earned Time Allowance, pursuant to Miss. Code Ann. § 47-5-138(1); Trusty Earned Time, pursuant to Miss. Code Ann. 47-5-138.1; Meritorious Earned Time, pursuant to Miss. Code § 47-5-142(2); Intensive Supervision Program, pursuant to Miss. Code Ann § 47-5-1003; Community Work Center / Pre-release Centers, as described in Miss. Code Ann § 47-5-181; or placement in the Regimented Inmate Discipline Program.

(2) MDOC will develop an adequate grievance procedure that is accessible to prisoners of varying English proficiency levels.

(3) MDOC will notify all prisoners of the rules of the institution, and will clearly describe the conduct that will be considered a rule violation and that may subject a prisoner to discipline.

**F. Suicide Prevention.**

(1) Within 90 days of the execution of this agreement, prisoners placed on suicide watch will be housed in a unit determined by a mental health professional to be appropriate.   A mental health professional will direct the amount and location of out-of-cell activity for the prisoner with the goal of providing the fewest restrictions appropriate for the prisoner.

(2) MDOC will develop a suicide prevention policy that includes the following:

    a.  a prohibition on placing prisoners on suicide watch as punishment or without medical justification;

    b.  instructions for thoroughly documenting the suicide precautions that are administered to

each prisoner who is placed on suicide watch;

c.  a process for conducting a review of any and all instances of attempted suicide or suicide. The review process will include a committee of staff (including mental health staff) who will review every attempted suicide or suicide in order to refine policies and procedures to decrease the number of these incidents;

d.  all prisoners placed on suicide watch will be assessed by mental health professional as soon as possible but no later than 18 hours from being placed on suicide watch; any prisoner placed on suicide watch will be re-assessed by a mental health professional at least every 18 hours; and

e.  if the initial assessment indicates that the prisoner is at a high risk for suicide and/or self-harm for longer than five days, that prisoner will be transferred to a facility that can provide intensive mental health services. If the assessment indicates that the prisoner needs less-intensive, but ongoing, supervision in order to prevent suicide and/or self-harm, a qualified mental health professional will develop an individual suicide prevention/treatment plan and will direct the appropriate unit to house the prisoner. This plan will be updated daily until the prisoner is no longer judged to be on an active suicide "watch" status.

(3) If an inmate has been deprived of his regular clothing (other than shoelaces and belts), a qualified mental health professional will determine if a medical or mental health justification exists for the continued deprivation. The deprivation may continue only if medical and mental health justifications exist for the continued deprivation and the mental health clinician makes specific written findings explaining these justifications.  Each 24-hour clinical reassessment must

10

include written findings explaining any medical/mental health justifications for any continuing deprivation.

(4) If an inmate has been subject to cell confinement or deprived of access to regular programming and activities, a qualified mental health professional will determine if a medical or mental health justification exists for the continued cell confinement and/or deprivation. The cell confinement and/or deprivation may continue only if medical and mental health justifications exist for the continued cell confinement and/or deprivation and the qualified mental health professional makes specific written findings explaining these justifications. Each 24-hour clinical reassessment must include written findings explaining the medical and mental health justifications for any continuing cell confinement and/or deprivation.

**G. Medical Care.**

(1) Prisoners will be provided adequate, appropriate, and timely medical and dental care to meet their individualized needs, including the treatment of acute and chronic conditions. Care will be provided at WGYCF, or the Prisoners will be transferred to a facility that complies with the National Commission on Correctional Health Standards for Health Care in Adult Confinement Facilities.

(2) WGYCF will not be used for long-term housing of prisoners with Serious Mental Illness. Prisoners with Serious Mental Illness must be transferred to a facility where they will receive appropriate mental health treatment. For purposes of this Consent Decree, "long-term" means more than 14 days. "Prisoners with Serious Mental Illness" means those with an Axis I diagnosis of a major mental illness (for example Schizophrenia or other psychotic disorder), Bipolar Disorder, Depressive Disorder or other serious Mood Disorder; prisoners who are significantly

11

disabled by mental retardation or an organic brain disorder; and prisoners who are significantly disabled by any other mental disorder (for example, Generalized Anxiety Disorder, Post-traumatic Stress Disorder, or any disorder characterized by repetitive self-harm).

(3) A medical professional will direct the amount and location of out-of-cell activity for the prisoners who are in need of medical care with the goal of providing the fewest restrictions appropriate for the prisoner.

**H. Contract Monitoring and Revisions.**

(1) MDOC will develop comprehensive contract monitoring policies and procedures, and will monitor the contracts with the operator of WGYCF and the health care provider at WGYCF in compliance with these policies and procedures.

(2) MDOC will revise the contracts currently in place with the operator of WGYCF and the health care provider at WGYCF to incorporate the terms of this Consent Decree.

### IV. Enforcement and Monitoring.

(1) The parties agree to the appointment of James Austin and Steven Martin as monitors responsible for tracking compliance with the terms of this Consent Decree. The monitors may, if asked by MDOC, provide technical assistance to MDOC to promote compliance with the terms of this Consent Decree. The monitors will be responsible for submitting reports to counsel every four months following the Court's approval of this Consent Decree. The monitors will provide their reports in draft form to the parties for comments at least two weeks before issuance. Should either of the monitor positions become vacant and the parties are unable to agree on a replacement, the parties will recommend candidates to the magistrate judge and the parties agree to accept the

12

candidate chosen by the magistrate judge. The reasonable cost for the experts' fees and expenses related to monitoring will be borne by MDOC.

(2) The monitors and Plaintiffs' counsel, with advance notice, will have full and complete access to WGYCF, to all facility records (including medical and mental health records), and to staff (who will be directed to cooperate with the experts and Plaintiffs' counsel), as well as to all subclass members. State attorneys may be present at interviews of staff and tours of facilities. The experts and Plaintiffs' counsel will comply with all applicable federal and state laws with regard to confidentiality of such records and information.

(3) Within 90 days of the Court's approval of this Consent Decree, MDOC expert James Austin and Plaintiffs' expert Steve Martin will collaborate in a non-binding manner with MDOC to promulgate the policies, procedures, classification, and staffing plans necessary to effectuate this Consent Decree. Plaintiffs' counsel will compensate Steve Martin only for expenses related to drafting these policies, procedures and plans and that expense will not be the responsibility of MDOC. MDOC retains the final authority over the drafting and wording of the policies and staffing plans, as long as the policies and plans are consistent with the terms of this Consent Decree. Once drafted, MDOC will submit the draft policies and plans to Plaintiffs' counsel. Plaintiffs' counsel will promptly notify MDOC of any objections, with an explanation as to how the draft is inconsistent with the terms of this Consent Decree, and will suggest revisions. MDOC will revise policies, procedures, plans, and other written documents as necessary to conform with the terms of this Consent Decree. If either party is unsatisfied with the resolution, then either party may invoke the assistance of the magistrate judge for mediation. If mediation fails to resolve the dispute, the Plaintiffs may file a motion to enforce this Consent Decree.

13

(4) The parties agree that the terms of prospective relief afforded by the terms of this Consent Decree are narrowly drawn, pertain exclusively to the subclass defined herein, extend no further than necessary to correct the violations of federal rights at issue, are the least intrusive means necessary to correct the violations of federal rights at issue, and all terms and conditions of this Consent Decree will be construed in accord with federal law, including the Prison Litigation Reform Act.

(5) The parties agree that the terms of this Consent Decree will be submitted to the Court for approval, and the Court will retain jurisdiction to enforce the terms thereof.

(6) Nothing in this Decree alters the requirements of the Prison Litigation Reform Act, including the exhaustion requirement, with respect to any class member who seeks to assert an individualized dispute against MDOC, including a damages action, which is unrelated to the terms of this Consent Decree. Nothing in this Consent Decree bars a member of the Plaintiff class from bringing an individualized suit seeking damages or prospective relief under state and/or federal law. Only class counsel may seek to enforce the terms of this Consent Decree.

(7) If Plaintiffs believe that MDOC has substantially failed to comply with any obligation under this Consent Decree, Plaintiffs' counsel will give written notice of that failure to MDOC. The parties will conduct good faith discussions to resolve the dispute. If the parties are unable to reach agreement within 7 days of Plaintiffs' written notice, the parties will submit the dispute to mediation before the magistrate judge who is assigned to this case. The parties will attempt in good faith to mediate the dispute. If the parties are unable to resolve the dispute within 21 days from the date of Plaintiffs' written notice, Plaintiffs may seek enforcement of this Consent Decree from the Court. In the case of an emergency posing an immediate threat to the health or safety of the

14

individuals housed at WGYCF, Plaintiffs' counsel may omit the notice and cure requirements herein (including the provision regarding mediation) before seeking enforcement from the Court.

(8) This Consent Decree will terminate five years from the date it is filed with the Court. The Consent Decree may also terminate earlier than five years from the date it is filed with the Court if the Court determines that MDOC substantially complied with each of the provisions of the Consent Decree and has continuously maintained substantial compliance for at least two years. Noncompliance with mere technicalities, or a brief lapse in compliance during a period of otherwise sustained compliance, will not constitute failure to maintain substantial compliance. The Court may extend this Consent Decree and/or any of its provisions twice, and each extension may be no longer than one year upon a finding that MDOC failed to substantially comply.

Agreed:

Sheila A. Bedi, Miss. Bar No. 101652
Southern Poverty Law Center
4431 Canal Street
New Orleans, LA 70119

Margaret Winter (*pro hac vice*)
The National Prison Project of
the ACLU Foundation, Inc.
915 15th Street, N.W., Seventh Floor
Washington, D.C. 20005

Robert B. McDuff, Miss. Bar. No. 2532
767 North Congress Street
Jackson, Mississippi 39202
**For the Plaintiffs**

Commissioner Christopher B. Epps
Mississippi Department of Corrections
723 North President Street
Jackson, MS 39202
**For the Defendant**

IT IS SO ORDERED        Dated and entered this _March_ day of _26th_ _____ 2012

United States District Judge Carlton W. Reeves

15