# Memorandum of Agreement
# Mental Health -WGYCF

# I. INTRODUCTION

(A) This Memorandum of Agreement ("MOA") between the certified class of Plaintiffs described in subsection (G) below and Christopher Epps, in his official capacity as Commissioner of the Mississippi Department of Corrections ("MDOC") resolves litigation concerning the mental health claims in <u>C.B., et al. v. Walnut Grove Correctional Authority, et al.</u>, case number 3:10cv663 (S.D. Miss.). A separate settlement agreement between the parties, that the parties will seek to have the Court enter as a Consent Decree, addresses other topics agreed to between the parties. This litigation concerns conditions of confinement at the Walnut Grove Youth Correctional Facility ("WGYCF") (*as described in* Miss. Code Ann. § 47-5-943 (Rev. 2007)), located at 1650 Highway 492, Walnut Grove, Mississippi 39189.)

This MOA refers to actions and inactions that will be undertaken by Commissioner Epps, his staff and contractors under his direction. For ease of reference only, this MOA refers to "MDOC" through this Agreement. The Parties intend for this Agreement to bind Commissioner Epps and his assigns.

The terms of this MOA apply to the facility located at this address, regardless of whether MDOC and/or the Mississippi Legislature change the name of the facility. The terms of this MOA do not follow a Plaintiff who is transferred, discharged, or otherwise leaves WGYCF.

(B) In order to resolve the mental health claims in this litigation, the parties have entered into this MOA.

(C) This MOA does not constitute an admission of liability by MDOC.

(D) This MOA is not intended to have any preclusive effect except between the parties.

(E) Nothing in this MOA will prevent the State of Mississippi and/or MDOC from modifying the mission of or closing WGYCF, or developing alternative community placements for the persons currently in the facility as set forth herein.

(F) Individuals who are not class members are not third party beneficiaries of this agreement and may not assert any rights under this agreement.

(G) The parties will jointly request that the Court enter an order certifying a sub-class comprised of all individuals who are now or who in the future will be housed WGYCF and who live with a serious mental illness, referred to in this MOA as "Plaintiffs" or "prisoners."

# II. CARE REQUIRED BY THE CONSTITUTION

The purpose of this MOA is to protect the rights of Plaintiffs to constitutionally adequate mental health care. The terms and requirements of this MOA will be interpreted to be consistent

with the remedial measures necessary to protect these rights, and consistent with applicable federal law.

## III. MENTAL HEALTH CARE

1) MDOC will provide prisoners with adequate, appropriate, and timely mental health care to meet their individual needs, including the treatment of acute and chronic conditions. If the MDOC Office of Medical Compliance determines that appropriate mental health care cannot be provided at WGYCF, MDOC may transfer prisoners to other MDOC or Non-MDOC facilities, on a permanent or temporary basis, in order to receive mental health treatment.

2) Within 90 days of the execution of this agreement, MDOC will develop and implement policies and procedures, and will develop and implement a staffing plan, to ensure that adequate mental health services are provided by adequate numbers of qualified mental health professionals using evidence-based, generally accepted treatment approaches.

3) Within 120 days of the execution of this agreement, Defendants will ensure that every prisoner at WGYCF who has not previously received a mental health evaluation or who is not currently being treated by a mental health professional will receive a mental health examination if that prisoner has physically attempted suicide or serious self-harm within the past year, or if that prisoner has a history of institutionalization in mental health facilities. Prisoners who are diagnosed with chronic mental health issues will receive individualized mental health treatment plans. The plans will comport with generally accepted treatment approaches.

## IV. IMPLEMENTATION AND MONITORING

4) Within 90 days of the Court's approval of this MOA, MDOC expert James Austin and Plaintiffs' expert Steve Martin will collaborate in a non-binding manner with MDOC to promulgate the policies, procedures, and staffing plans necessary to effectuate this MOA. Plaintiffs' counsel will compensate Steve Martin only for expenses related to drafting these policies, procedures and plans and that expense will not be the responsibility of MDOC. MDOC retains the final authority over the content, drafting, and wording of the policies and staffing plans, as long as the policies and plans are consistent with the terms of this MOA. Once drafted, MDOC will submit the draft policies and plans to Plaintiffs' counsel. Plaintiffs' counsel will promptly notify MDOC of any objections, with an explanation as to how the draft is inconsistent with the terms of this MOA, and will suggest revisions. MDOC will revise policies, procedures, plans, and other written documents as necessary to conform with the terms of this MOA. If either party is unsatisfied with the resolution, either party may invoke the assistance of the magistrate judge for mediation. If mediation fails, Plaintiffs may re-instate the Complaint.

5) The parties agree to the appointment of James Austin and Steve Martin as monitors responsible for tracking compliance with the terms of this MOA. The monitors may, if asked by MDOC, provide technical assistance to MDOC to promote compliance with the terms of this MOA. The monitors will be responsible for submitting reports to counsel every four months following the Court's approval of this MOA. The monitors will provide their reports in draft form to the parties for comments at least two weeks before issuance. Should both of the monitor positions become vacant and the parties are unable to agree on a replacement, the parties will recommend candidates to the magistrate judge and the parties agree to accept the candidate chosen by the magistrate judge. The reasonable cost for the experts' fees and expenses related to monitoring will be borne by MDOC.

## V. ACCESS

6) The monitors and Plaintiffs' counsel, with advance notice, will have full and complete access to WGYCF, to all facility records, and to staff (who will be directed to cooperate with the experts and Plaintiffs' counsel), as well as to all subclass members. State attorneys may be present at interviews of staff and tours of facilities. The experts and Plaintiffs' counsel will comply with all applicable federal and state laws with regard to confidentiality of such records and information.

## VI. ENFORCEMENT AND TERMINATION

7) If Plaintiffs believe that MDOC has substantially failed to comply with any obligation under this MOA, Plaintiffs' counsel will give written notice of that failure to MDOC. The parties will conduct good faith discussions to resolve the dispute. If the parties are unable to reach agreement within 7 days of Plaintiffs' written notice, the parties will submit the dispute to mediation before the magistrate judge who is assigned to this case. The parties will attempt in good faith to mediate the dispute for a period of 21 days with the magistrate judge. The terms of this MOA are not subject to state or federal court enforcement other than the reinstatement of those paragraphs of the Complaint that this MOA settled. If MDOC has substantially failed to comply with any obligation under this agreement, Plaintiffs may reinstate the mental health provisions of the Complaint. In the case of an emergency posing an immediate threat to the health or safety of the individuals housed at WGYCF, Plaintiffs' counsel may omit the notice and cure requirements herein (including the provision regarding mediation) before reinstating the Complaint. All Plaintiffs are bound by this MOA, and a Plaintiff or Plaintiffs may not initiate a legal action asserting claims contained within the Complaint filed in cause number 3:10cv663 (S.D. Miss.) as long as this MOA is in effect. Nothing in this MOA bars a member of the Plaintiff class from bringing an individualized suit seeking damages or prospective relief under state and/or federal law. Only class counsel may seek to enforce the terms of this MOA.

8) In the event that Plaintiffs reinstate the Complaint, the parties agree that this case will proceed expeditiously. To that end, the parties agree to the following procedures for reinstatement:

   a. Plaintiffs will file a Notice of Re-instatement and an Amended Complaint.
   b. Within 20 days of Plaintiffs' filing, Defendants will file a responsive pleading.
   c. The case management conference, unless stayed pursuant to court order, will occur within 35 days of Plaintiffs' filing or at the earliest date that is convenient for the court.

9) This MOA will terminate five years from the date it is executed, unless the Complaint is reinstated as referenced above. When the MOA is terminated, all claims pertaining to mental health in case number 3:10cv663 (S.D. Miss.) will be dismissed without prejudice. The MOA may also terminate earlier than five years from the date it is executed if the magistrate judge determines MDOC has substantially complied with each of the provisions of this MOA and has continuously maintained substantial compliance for at least two years. Noncompliance with mere technicalities, or a brief lapse in compliance during a period of otherwise sustained compliance, will not constitute failure to maintain substantial compliance.

Executed the 15 day of February, 2012

Agreed:

Sheila A. Bedi, Miss. Bar No. 101652
Southern Poverty Law Center
4431 Canal Street
New Orleans, LA 70119

Margaret Winter (*pro hac vice*)
The National Prison Project of
the ACLU Foundation, Inc.
915 15th Street, N.W., Seventh Floor
Washington, D.C. 20005

Robert B. McDuff, Miss. Bar. No. 2532
767 North Congress Street
Jackson, Mississippi 39202
**For the Plaintiffs**

Commissioner Christopher B. Epps
Mississippi Department of Corrections
723 North President Street
Jackson, MS 39202
**For the Defendant**