**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**NORTHERN DIVISION**

| | | |
|---|---|---|
| **C.B., by and through his next friend,** | ) | |
| **Charleston DePriest, et al.** | ) | **Civil Action No. 3:10cv663** |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **WALNUT GROVE CORRECTIONAL** | ) | |
| **AUTHORITY, et al.** | ) | |
| | ) | |
| **Defendants.** | ) | |
| _____ | ) | |

**PLAINTIFFS' RESPONSE TO DEFENDANTS' SUBMISSION OF THE REPORT**
**OF DR. AMANDA RUIZ**

**Introduction**

On October 23, 2014, the Defendants filed with the Court a document captioned "Report of the Court Monitors' Mental Health Care Consultant." ("Defendants' Report") (Doc. 109). Plaintiffs submit this Response in order to correct certain misimpressions that might inadvertently have been created by Defendants' Report.[1]

(1)  The Defendants are not correct when they claim in their introductory statement that "[a]t the direction of the Court," the Court Monitors "selected and engaged Dr. Amanda Ruiz" to monitor the adequacy of mental health services at Walnut Grove Correctional Facility. The Monitors were permitted to retain a mental health consultant and they selected Dr. Ruiz, but not at the direction of the Court: they did not consult with the Court on retention of a particular consultant.

_____

[1] Plaintiffs do not ask the Court to take any action on Defendants' Report since it does not pertain to any motion pending before the Court; Plaintiffs submit this Response to make their position clear for the record, should the Report at some point becomes relevant.

(2) While the Defendants' introductory statement points to Dr. Ruiz's conclusion that "adequate mental health care is being provided to the inmates of Walnut Grove Correctional Facility," the Monitors have not adopted or endorsed that conclusion or any of Dr. Ruiz's findings regarding mental health services, except her findings of Partial Compliance/Compliance with the Suicide Prevention provisions of the Consent Decree.

(3) After the Plaintiffs explained to the Monitors their objections to Dr. Ruiz's methodology, the Monitors decided not to submit Dr. Ruiz's report to the Court.  The Defendants then unilaterally submitted Dr. Ruiz's report to the Court after failing to persuade the Monitors to do so.

### Factual Background to Defendants' Report

The Consent Decree in this case provides for the appointment of James Austin and Steven Martin as monitors responsible for tracking compliance with the terms of the Consent Decree, and that the monitors "may, if asked by MDOC, provide technical assistance to MDOC to promote compliance with the terms of the Consent Decree."  Consent Decree ¶IV(1) (Doc. 75-3 at 12).  The Consent Decree provides that Walnut Grove "will not be used for long-term housing of prisoners with Serious Mental Illness," with "long-term" defined as more than 14 days. Consent Decree III.G(2) (Doc. 75-3 at 11).

The Consent Decree does not address the subject of mental health services to the class, other than to require certain measures regarding Suicide Prevention. Consent Decree at III.F (Doc. 75-3 at 9).   The Parties entered into a separate Memorandum of Agreement on Mental Health (MOA) regarding the provision of mental health services at Walnut Grove. (Doc. 75-4). The MOA provides that "MDOC will provide prisoners with adequate, appropriate and timely mental health care to meet their individual needs, including the treatment of acute and chronic

2

conditions." MOA ¶II(1) (Doc. 75-4 at 3).  The MOA also provides for the appointment of Dr.

Austin and Mr. Martin "as monitors responsible for tracking compliance with the terms of this

MOA" and provides that "The monitors may, if asked by MDOC, provide technical assistance to

MDOC to promote compliance with the terms of this MOA."  MOA ¶ IV(5) (Doc. 75-4 at 4).

Finally the MOA provides that the monitors "will be responsible for submitting reports to

counsel every four months" and that they "will provide their reports in draft form to the parties

for comments at least two weeks before issuance."  *Id.*

 During the first several reporting periods, the Monitors did not report on Defendants'

compliance with the MOA on mental health, and eventually Plaintiffs retained a mental health

expert, Dr. Pablo Stewart, to review the mental health care provided at Walnut Grove.  Plaintiffs

submitted Dr. Stewart's report to the Court on May 1, 2014 (Doc. 102).  Dr. Stewart concluded

that "[t]he lack of an adequate system at Walnut Grove for identifying prisoners with emerging

serious mental health needs and delivering mental health to patients with serious mental health

needs has created an extremely dangerous situation at Walnut Grove" and that prisoners with

serious mental health needs "are being subjected to needless pain and suffering from delay in

necessary care and are being put at risk of serious outcomes because of inadequate treatment."

*Id.* at 7.  Defendants disputed Dr. Stewart's findings in an anonymous document submitted to

Plaintiffs by Health Assurance LLC, and on August 8, 2014, Dr. Stewart submitted a

supplemental memorandum responding to Defendants' criticism, providing in great detail the

basis for his findings on chart reviews.[2]

 On August 14, 2014, pursuant to the provision that "the monitors may, if asked by

MDOC, provide technical assistance to MDOC to promote compliance with the terms of this

---

[2] Defendants did not file their opposition to Dr. Stewart's report and therefore Plaintiffs did not
file Dr. Stewart's response to the attack on his findings.

MOA" (Doc. 75-4 at 4), the Monitors announced to the parties that they had selected and retained mental health expert Dr. Amanda Ruiz to assist them.  The Monitors did not consult in advance with the Court (or with Plaintiffs) about their selection and retention of Dr. Ruiz. Therefore, Defendants' claim that the Monitors "selected and engaged Dr. Amanda Ruiz" at "the direction of the Court" (Doc. 109 at 1) is simply incorrect.

On October 10, 2014, the Monitors provided the Parties with a draft of the Monitors' 5th Report to the Court, and invited the Parties' comments, as provided in the Consent Decree. With the draft of their Report, the Monitors included two attachments:  a report on medical care by AdminPros (the consulting firm to which MDOC has outsourced its medical and mental health monitoring obligations at Walnut Grove) and a report on mental health care by Amanda Ruiz, MD (the mental health consultant retained by the Monitors).

In an October 21, 2014 telephonic conference, Plaintiffs' counsel provided the Monitors with their comments on the draft of the 5th Report.  Plaintiffs' asked the Monitors not to submit Dr. Ruiz's report to the Court, on two grounds:  First, Plaintiffs pointed out that the Monitors' draft report neither adopted nor incorporated any of Dr. Ruiz's findings, other than those regarding the Suicide Prevention provisions of the Consent Decree (Doc. 75-3 at 9) and thus there was no legitimate reason for the Monitors to submit her entire report to the Court. Second, Plaintiffs pointed to multiple fundamental defects in Dr. Ruiz's methodology, which Plaintiffs believe make her conclusions invalid and untenable.   Plaintiffs pointed out that the Monitors had no basis for accepting Dr. Ruiz's conclusions as opposed to Dr. Stewart's.   The

Monitors agreed that the Ruiz report would not be submitted to the Court and that the Monitors would rely only on Dr. Ruiz's observations regarding Suicide Prevention.[3]

The Ruiz report contains many serious methodological deficiencies. For example, it analyzes only two mental health charts – a ludicrously small sample -- and even in her very brief, cursory and perfunctory review of the two charts she analyzes, Dr. Ruiz concedes that one of the two reveals inadequate care; she makes the baffling finding that mental health services are adequate even while admitting that "individual therapy consists largely of cell-side check-ins" (a completely unacceptable practice under NCCHC and community standards, since it affords no patient confidentiality), and that the few group therapy programs available are held "intermittently (once or twice a month but sometimes skip months" and for unknown reasons "attendance is low." Further, she admits to relying on the self-serving AdminPros Report , although the AdminPros auditors have not been shown to be qualified to evaluate the adequacy of the mental health care required by the Consent Decree.  Dr. Ruiz's report (which is notably vague and formulaic) does not attempt in any way to address Dr. Stewart's specific findings regarding deficiencies in the delivery of mental health care and in staffing.

After the Monitors agreed not to submit the Ruiz Report, Defendants' counsel tried unsuccessfully to persuade them to change their minds and submit the report.  The Monitors declined to do so. On October 22, 2014, the Monitors submitted to the parties the final version of their 5th Report, as modified by their discussions with the parties. The Monitors did not include the Ruiz report but only inserted her limited findings regarding suicide prevention.  Although the Monitors did not include the Ruiz Report, they did include for filing a number of other attachments provided by Defendants (including a statement by the managing partner of Health

---

[3] The Monitors found that MDOC's suicide prevention policy and its current practice are "discordant."   (Doc. 110 at 14).

Assurance LLC, extolling the mental health care that his company provides at Walnut Grove). *See* 5th Report of Monitors (Doc. 110 at 29-32). The Monitors asked Defendants' counsel to file their 5th Report with the Court.

On October 24, 2014, Defendants' counsel filed Document 109, consisting of Dr. Ruiz's report, together with an introductory statement by Defendants' counsel characterizing Dr. Ruiz as an expert "selected and engaged by the Monitors at the direction of the Court," and quoting her conclusion that "although minor opportunities for improvement remain, adequate health care is being provided to the inmates of Walnut Grove Correctional Facility." (Doc. 109). Defendants then filed the Monitors' 5th Report with attachments. (Doc. 110).

## Conclusion

Defendants' characterization of Dr. Ruiz's involvement in this case implies that the Monitors have adopted her conclusion that "although minor opportunities for improvement remain, adequate mental health care is being provided to the inmates of Walnut Grove Correctional Facility." Such is not the case. The Monitors have not adopted or endorsed that conclusion or any of Dr. Ruiz's findings other than her limited findings on Suicide Prevention (including her finding that MDOC's suicide prevention policy is discordant with its practice).

Dated this 3rd day of November, 2014.

Respectfully submitted,

*/s/* Margaret Winter
Margaret Winter
National Prison Project of ACLU
915 15th Street, NW, 7th Floor
Washington, DC 20005
Phone: (202) 393-4930
Fax: (202) 393-4931
mwinter@npp-aclu.org
(admitted *pro hac vice*)

Jennie Eichelberger, MSB No. 102522
Jody Owens, II, MSB No. 102333
Southern Poverty Law Center
111 East Capitol Street, Suite 280
Jackson, Mississippi 39201
Telephone:  (601)948-8882
Facsimile:  (601)948-8885
jennie.eichelberger@splcenter.org
jody.owens@splcenter.org


Robert B. McDuff, MSB No. 2532
Jacob W. Howard, MSB No. 103256
McDuff & Byrd
767 N. Congress
Jackson, MS
Phone: (601) 969-0802
Fax: (601) 969-0804
rbm@mcdufflaw.com
jake@mcdufflaw.com

**CERTIFICATE OF SERVICE**

I, Jennie Eichelberger, hereby certify that a true and correct copy of the foregoing document was filed electronically. Notice of this filing will be sent by electronic mail to all parties by the Court's electronic filing system. Parties may access this filing through the Court's CM/ECF System.

SO CERTIFIED, this 3rd day of November, 2014.

                                    _/s/  Jennie Eichelberger_
                                    Jennie Eichelberger