November 4, 2014

To:  Harold Pizzetta
From: Margaret Winter
Re:  Proposal to discuss remedial measures for Walnut Grove
Cc:  Jody Owens, Jennie Eichelberger, Rob McDuff, Jake Howard

Harold,

In light of the Monitors' 5th Report, we would like to propose a conference call with you before the November 18 status conference, to try to reach an agreement on remedial measures that would address the concerns in Plaintiffs' motion for enforcement of the Consent Decree.

Although we are encouraged that MDOC has expressed its intention of working to address deficiencies, we want you to know how deeply concerned we are by MTC's response to the 5th Report: MTC flatly rejected as unwarranted each and every one of the Monitors' criticisms and findings of noncompliance   It is hard for us to see how genuine and lasting progress can be made if MDOC's operating agent at Walnut Groove strikes an attitude of defiance, rather than expressing and demonstrating in action a strong commitment to working with the Monitors, MDOC and Plaintiffs to implement meaningful remedial measures.

We would appreciate it if you would provide us as soon as possible with some additional information, and then meet with us telephonically on Friday November 7 to discuss the following proposals:


**PROTECTION FROM HARM**

The Monitors' 5th Report states:
       "To date, MTC has not provided a copy of an after-action review of the July [2014] disturbance."  5th Report at 8.
       "MDOC should require that MTC have an effective Emergency Response Plan in place that officers have been trained to follow [], and performance is tested in real time drills."  5th Report at 8.

       **Request for information:**  Please provide us (1) the current Emergency Response Plan; (2) the after-action review of the July disturbance.



**Plaintiffs' proposal:** MDOC should require MTC to conduct real-time drills to train staff to follow the ERP, and should audit those real-time drills.

## PHYSICAL PLANT SECURITY CONCERNS

The Monitors' 5th Report states that "MTC officials initiated a project to repair and upgrade the cell door locking mechanisms in the housing units. They also retained a security consultant to inspect the facility to determine measures to improve the security operation." 5th Report at 9.

**Request for Information:** Please provide us with the details of the project to repair and upgrade the cell door locking-mechanisms in the housing units – how is this plan different from previous unsuccessful efforts to make the doors secure? When will this project be completed? Did MTC/MDOC consult with an independent security expert to guide this project? Who is the credentials of the security consultant retained to inspect the facility to determine measures to improve security? What were the results and recommendations from the independent inspection? What is the plan to implement the recommendations?

**Plaintiffs' proposal:** We believe MDOC should require MTC to do whatever is necessary to get the problems of the doors fixed forthwith. This huge gap in security has been documented since the Department of Justice's 2012 findings letter. The time for half measures is long past.

## PROGRAMMING

The Monitors' 5th Report states:
"While facility officials have a variety of programming plans being considered, the inmate population spends a significant portion of their waking hours with un-programmed/unstructured time in the dayrooms of the housing units." 5th Report at 4.
"In a meeting during the September 15-16 site inspection, the new Warden stated that facility officials are developing plans to offer more programming/activities to reduce inmate idleness." 5th Report at 9.
"The overall staffing complement will continue to lack experience, and thus, will require very active supervision by both mid-level and upper-level managers. To the extent that management can actually bring increased program activity for the inmate population online is the extent to which the line staff's burdens relating to supervision will be tempered." 5th Report at 10.

2

**Request for information:** What programs are under consideration? What is the number of program slots in each, and what is the number of hours of operation per week of each program?

**Plaintiffs' proposal:** We ask MDOC to consider committing to a standard level of programming for general population inmates, with a goal of 4 hours a day, 5 days a week, for each general population inmate. We would suggest a meeting of MTC/MDOC officials, Plaintiffs' exert and the Monitors to discuss an action plan.

**STAFFING**

The Monitors' 5th Report states:

"A review of the videos of the July disturbance reflected housing units with no visible officer coverage. Moreover it was evident that officers were allowing inmates to freely enter the cells of other inmates. The high vacancy rate, *the inexperience of the staffing complement,* and the complicity of four officers in the July disturbance strongly suggest that MTC management continues to struggle with maintaining sufficient numbers of adequately trained staff. *It is essential that minimal staffing requirements provide for at least one security office be assigned to each medium security housing unit on the first two shifts and the third shift where the is significant out-of-cell movement.*" 5th Report at 10 (emphasis added).

"The current pre-service training class numbers approximately 47 candidates. While this class will certainly move WGCF toward filling badly needed vacancies, the overall staffing complement will continue to lack experience, and thus, will require very active supervision by both mid-level and upper-level managers …. It is noted that several Supervisory Development Programs (SDP) have taken place at WGYCF during the current reporting period." 5th Report at 10.

**Request for information:** (1) We wish to see the current staffing plan. Does MTC have a staffing plan that ensures *at least one security officer be assigned to each medium security housing unit on the first two shifts and the third shift where there is significant out-of-cell movement"* – or not? (2) What kind of in-service training is being provided to the new staff after the academy?

**Plaintiffs' proposal**: (1) MDOC must require MTC to have at least one security officer in every unit when units aren't locked down. (2) Along with regular reporting to monitors on total numbers of staff, MDOC should require MTC to report on its post-academy training efforts.

3

## USE OF FORCE

The Monitors' 5th Report identified multiple problems regarding use of force, including: multiple failures to make required video recordings; failure to document communication with medical staff prior to administering chemical agents; applying pepper spray at an unsafe distance; and subjecting an inmate to a dangerous takedown. 5th Report at 11. "Disturbingly, neither of these incidents reflected completion of the administrative review process. Moreover, in the August 'Analysis of Use Force' conducted by the Chief of Security and the Facility Investigator, none of these aforementioned issues were addressed." 5th Report at 11.

MTC's response was that they dealt with the two incidents that were outside of policy, and they are going to get new cameras. There was no response to the lack of medical review prior to use of chemical agents, the flaw in the administrative review process or the failure by the Chief of Security to address any of these issues.

**Request for information:** Has MDOC addressed these issues with MTC? What corrective action has been taken?

**Plaintiffs' proposal:** MDOC should require corrective action by MTC.

## GANG MANAGEMENT

MDOC and MTC should work to develop affirmative strategies to discourage gang domination at Walnut Grove, through more robust programs to reward and encourage non-gang activity. *See* 03/14/2014 Report and Recommendations of Eldon Vail (Doc. 100).

**Request for information:** Does MTC have a plan to improve its management of disruptive gangs?

**Plaintiffs' proposal:** We ask that MDOC agree to a meeting with the Plaintiffs and the Monitors to discuss creation, implementation and monitoring of an incentive plan for or non-gang behavior.

## MONITORING

The Monitors' 5th Report states: "the audit administrators may wish to more closely review the Monitors' reports to identify more substantive audit

4

measures given the *stark inconsistencies between the WGYCF audit findings and the Monitors' findings in such key areas as Protection from harm, Staffing, and use of Force."* (Emphasis added)

**Request for information:** MTC flatly denies in its response to the Monitors' 5th Report that there is any problem with its audit measures. What kind of warning or demand, if any, has MDOC given to MTC about the extraordinary defects in reporting identified in the Monitors' 5th Report?

**Plaintiffs' proposal:** MDOC should require more substantive and meaningful audit measures to address the kind of gross deficiencies in MTC's auditing disclosed in the Monitors' 5th Report.

We hope you will agree to provide us with the information we ask for and to meet with us to discuss our proposals before the November 18 status conference.

Regards,

Margaret

5