| | | |
|---|---|---|
| **C.B., by and through his** | ) | |
| **next friend, Charleston DePriest, et al.** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | **Civil Action No. 3:10cv663-CWR-FKB** |
| **v.** | ) | |
| | ) | |
| **WALNUT GROVE CORRECTIONAL** | ) | |
| **AUTHORITY, et al.** | ) | |
| | ) | |
| **Defendants.** | ) | |
| ———————————————— | ) | |

## OPPOSITION TO DEFENDANTS' MOTION FOR HEARING AND TO CONSOLIDATE AND CONTINUE ON PLAINTIFFS' MOTION TO ENFORCE CONSENT DECREE

Nearly eight months ago, on August 6, 2014, Plaintiffs filed a Motion for Enforcement and Modification of Consent Decree in this case, and requested an evidentiary hearing.[1] The impetus for the Motion was the July 10, 2014 riot at Walnut Grove – the second major riot at Walnut Grove within a six month period. Both the July riot and the New Year's 2014 riot resulted in serious injuries to many prisoners, including stabbing and puncture wounds, lacerations, and fractures.

At a series of status conferences in August 2014,[2] November 2014,[3] December 2014,[4] and January 2015,[5] and February 2015,[6] Defendants vehemently opposed an evidentiary hearing,

---

[1] Motion for Enforcement and Modification of Consent Decree, Doc. 106.

[2] Minute Entry for proceedings held before District Judge Carlton W. Reeves: Status Conference held on 8/7/2014.

[3] Minute Entry for proceedings held before District Judge Carlton W. Reeves: Telephone Status Conference held on 11/6/2014.

[4] Minute Entry for proceedings held before District Judge Carlton W. Reeves: Telephone Status Conference held on 12/30/2014.

[5] Minute Entry for proceedings held before District Judge Carlton W. Reeves: Status Conference held on 1/8/2015.

arguing that a hearing would be "premature," that Plaintiffs' counsel were "rushing into court," and that the hearing should be postponed indefinitely. At first, Defendants argued that the hearing should be postponed until after the Monitor's Fifth Report. Then, after the Fifth Report was issued – with its findings that Defendants were in noncompliance with key provisions of the Decree, and that there were "stark inconsistencies" between Defendants' version of the facts and the Monitors' own findings "in such key areas as Protection from harm, Staffing, and use of Force[7] – Defendants argued that the hearing should be postponed until after the Monitors' Sixth Report. Finally, in January 2015, five months after Plaintiffs' request for an evidentiary hearing, Defendants argued for the first time that the hearing must be postponed until after mediation. Plaintiffs readily agreed to mediation, engaged in good faith mediation before Magistrate Ball for several hours on February 6, and agreed to resume mediation on March 30.

On March 13, 2015, with the April 1 hearing date looming, Defendants filed a Motion to Terminate the Consent Decree[8] along with a Motion to Consolidate that Motion with Plaintiffs' long pending Motion to Enforce the Decree, and a request to adjourn *sine die* the evidentiary hearing on Plaintiffs' motion.[9] Defendants have provided no credible argument for postponement.

Plaintiffs will respond in full to Defendants' Motion to Terminate the Consent Decree within the time provided by the Federal Rules or such other time as this Court may direct. For purposes of this opposition to Defendants' request for a continuance of the evidentiary hearing, however, Plaintiffs only note that the Motion to Terminate the Consent Decree is precluded by the

---

[6] Minute Entry for proceedings held before District Judge Carlton W. Reeves: Telephone Status Conference held on 2/9/2015.

[7] 5th Report of Monitors Pursuant to: Class Action Consent Decree at 84 Doc. 110 (Oct. 22, 2014).

[8] Motion to Terminate Prospective Relief Granted and Ordered by the Court's Approval of the Consent Decree, Doc. 129 (Mar. 13, 2015)

[9] Motion for Hearing and to Consolidate and Continue, Doc. 131 (Mar. 13, 2015).

termination provisions of the Consent Decree itself, which provide:

> This Consent Decree will terminate five years from the date it is filed with the Court [*i.e.*, March 26, 2017]. The Consent Decree may also terminate earlier than five years from the date it is filed with the Court *if* the Court determines that MDOC has substantially complied with *each* of the provisions of the Consent Decree *and has continuously maintained substantial compliance for at least two years.* Noncompliance with mere technicalities, or a brief lapse in compliance during a period of otherwise sustained compliance, will not constitute failure to maintain substantial compliance. The Court may extend this Consent Decree and/or any of its provisions twice, and each extension may be no longer than one year upon a finding that MDOC failed to substantially comply.

Consent Decree at 15, Doc. 75-3. Plaintiffs intend to show in their opposition to the motion to terminate that it is these negotiated, agreed-upon, court-approved and court-enforceable provisions of the Consent Decree that govern termination.

But even assuming *arguendo* that the PLRA termination provisions supersede the consent-decree provisions on termination, and that Defendants need wait no longer to move for termination, there would still be no valid reason for postponing the April 1 hearing on Plaintiffs' Motion to Enforce the Decree. Defendants assert that it would be "logical" and "prudent" to postpone the April 1 hearing, but their argument is composed of non sequiturs.[10]

Defendants first assert that "many, but not all, of the issues raised by Defendants' termination motion are before the Court in [Plaintiffs'] motion" and thus consolidation of the two motions will "expedite the resolution of some of the pending matters. " Def. Mo. at 2-3. It is inexplicable how indefinitely *postponing* the April 1 evidentiary hearing – which has already been postponed for nearly eight months – could *expedite* resolution of the matters to be presented for resolution at that hearing.

The Court, as well as out-of- state counsel, the court-appointed Monitors, and the parties'

---

[10] Motion for Hearing at 2.

corrections experts, who are based in Washington, D.C, California, Washington State, Texas, and Virginia, have already locked in their schedules to allow their participation in the hearing set many weeks ago for April 1-3. Indeed, Defendants' most recent requests for delay were to accommodate the schedules of Defendants' corrections expert and of MTC's counsel. Moreover, as Defendants are well aware, every delay in the hearing has resulted in fresh claims by Defendants of reforms in policies, procedures, and conditions at Walnut Grove, creating an ever-moving target and necessitating new rounds of discovery to account for current conditions. The waste, expense, and duplication of preparation time involved in once more postponing the hearing would be staggering.

Next, Defendants argue that the hearing should be postponed because Plaintiffs must prove not merely that Defendants are violating the provisions of the Consent Decree but rather that they are violating Plaintiffs' federal rights. Doc. 131 at 3. There is no reason why the standard of proof should affect the timing of the hearing.[11] But in any case, Plaintiffs intend to prove at the hearing on their Motion to Enforce and Modify the Consent Decree that Defendants are violating Plaintiffs' Eight Amendment rights by subjecting them to a current ongoing substantial risk of serious harm. *See* Memorandum in Support of Motion for Enforcement and Modification of the Consent Decree, Doc. 107 at 2 ("There is an ongoing, substantial risk of serious injury—including death—from the dangerous conditions at Walnut Grove."); Amended Memorandum in Support of Motion for Enforcement and Modification of the Consent Decree, Doc. 115 at 19 ("If the Court determines after evidentiary hearing that additional measures are

---

[11] This Court directed Defendants to file a response to Plaintiffs' Amended Memorandum in Support of Motion for Enforcement and Modification of the Consent Decree. *See* Minute Entry for proceedings held before District Judge Carlton W. Reeves: Status Conference held on 1/8/2015. Defendants, however, declined to state its position with respect to Plaintiffs' legal arguments, *see* Response to Motion, Doc. 116. Plaintiffs noted in their Reply that Defendants should not be permitted to later argue that Plaintiffs' statement of the law was erroneous. Reply Br., Doc 119.

needed to protect members of the Plaintiff class at Walnut Grove from unreasonable risk of serious harm, the Court should modify the decree in this case and enter a new order providing for whatever narrowly and suitably tailored relief is necessary to achieve that goal."). Accordingly, even if this Court were to decide that Defendants may proceed on their Motion to Terminate, there is no apparent reason why this Court could not rely on the evidence of record that the parties will present at the April 1-3 hearing on issues involving violence and risk of harm.

Finally, Defendants assert that the evidentiary hearing on Plaintiffs' motion should be postponed because the April 1 hearing addresses only issues relating to corrections, whereas Defendants' termination motion encompasses all issues including the medical and mental health care provisions of the Consent Decree, and that Defendants must be allowed to present *all* issues to the Court "at one time, instead of only piecemeal." Doc. 131 at 3-4. There is no apparent reason why the court needs to hear all issues in the case "at one time." The issues on violence, to be heard on April 1-3, are discrete and distinct from the medical and mental health issues encompassed in the Consent Decree, and the witnesses at a hearing on medical and mental health care will not be the same as those who will testify on issues raised in Plaintiff's Motion to Enforce and Modify the Consent Decree. Defendants' claim that they must be allowed to present all issues to the Court "at one time" is audacious given that Plaintiffs raised their concerns regarding inmate safety on August 6, 2014, and have already waited eight months to present their evidence to the Court, while Defendants have waited until two weeks before that hearing to move to terminate the medical and mental health provisions of the Consent Decree.

Furthermore, the great difficulty that was involved in identifying a hearing date amenable to the Court, counsel, the parties' experts and all other witnesses on the violence issues would be enormously magnified by resetting the hearing to include medical and mental health witnesses as

well as the experts and witnesses on violence.  Indeed, a hearing presumably would not even be scheduled until after discovery, expert tours, and expert reports regarding current conditions on the medical and mental health issues, and a new round of discovery to reflect current conditions on the violence issues.

District courts have extremely wide latitude in making case management decisions, including scheduling matters.  *See, e.g., Ctr. for Biological Diversity, Inc. v. BP Am. Prod. Co.,* 704 F.3d 413, 432 (5th Cir. 2013) ("The trial court's managerial power is especially strong and flexible in matters of consolidation."); *Douglas v. Houston Housing authority* (5th Cir. 2014) (per curiam); *Graves v. Arpaio* (9th Cir. 2009) (rejecting argument that the district court abused its discretion in ordering prospective relief following a termination hearing rather than holding a later separate hearing on remedy).  Plaintiffs respectfully submit that this Court should exercise its broad discretion in scheduling matters to proceed with the long-deferred evidentiary hearing already calendared for April 1-3.  Neither Plaintiffs nor Defendants can predict how this Court will rule on the evidence; but Defendants' desperate last-minute maneuver to derail the hearing strongly suggests that they desire at all cost to prevent this Court  from hearing the evidence of a current and ongoing violation of Plaintiffs' Eighth Amendment rights.

Dated this 17th day of March, 2015.

Respectfully submitted,

/s/Margaret Winter
Margaret Winter
National Prison Project of ACLU
915 15th Street, NW, 7th Floor
Washington, DC 20005
Phone: (202) 393-4930
Fax: (202) 393-4931
mwinter@npp-aclu.org
(admitted *pro hac vice*)

/s/Jody E. Owens, II
Jody E. Owens, II, MSB No. 102333
Jennie Eichelberger, MSB No. 102522
Southern Poverty Law Center
111 East Capitol Street, Suite 280
Jackson, Mississippi 39201
Phone: (601) 948-8882
Fax: (601) 948-8885
jody.owens@splcenter.org
jennie.eichelberger@splcenter.org

Robert B. McDuff
Jacob W. Howard
McDuff & Byrd
767 North Congress Street
Jackson, Mississippi 39202
Phone: (601) 969-0802
Fax: (601) 969-0804
rbm@mcdufflaw.com
jake@mcdufflaw.com

## CERTIFICATE OF SERVICE

I, Jody E. Owens, hereby certify that a true and correct copy of the foregoing document was filed electronically. Notice of this filing will be sent by electronic mail to all parties by the Court's electronic filing system. Parties may access this filing through the Court's CM/ECF System.

SO CERTIFIED, this 17th day of March, 2015.

/s/Jody E. Owens, II
Jody E. Owens, II, MSB No. 102333