**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION**


**CHARLTON DEPRIEST, ET AL.**                                           **PLAINTIFFS**


**v.**                                            **Civil Action No. 3:10-cv-663(CWR)(FKB)**


**WALNUT GROVE CORRECTIONAL
AUTHORITY, ET AL.**                                                **DEFENDANTS**

_____

**REPLY IN SUPPORT OF MOTION FOR HEARING AND TO CONSOLIDATE
AND CONTINUE**
_____

**REBUTTAL ARGUMENT**

Plaintiffs' oppositional response misses the mark, both from a factual and legal perspective. Nearly eight months ago, Plaintiffs did file an enforcement and modification motion. The facts championed by Plaintiffs, however, paint only a splintered picture of the events leading from that original motion to this point in the litigation. The legal theories advanced by Plaintiffs follow the same fractured path. A complete depiction of the facts and the law demonstrates the controlling application of the Prison Litigation Reform Act ("PLRA") to the issues before the Court, the reasoning for Defendant's termination motion, and why a grant of Defendant's consolidation motion is warranted.

**I.      Background Leading to Defendant's Termination and Consolidation Motions.**

After Plaintiffs initially filed their motion to enforce and modify, a status conference was held on August 7, 2014. *See Minute Entry for Status Conference held on 8/7/2015.* As the minute entry details, the Court put the burden on the Plaintiffs to "advise the Court how they

1

wish[ed] to proceed on their [ ] Motion." *Id.* The Court then made clear that it would "set any deadlines/hearing necessary regarding the motion" after Plaintiffs detailed how they wanted to proceed. *Id.* The Court again ordered this on November 18, 2014. *See Text Order Setting Hearing from 11/05/2015* ("Set Hearing: Status Conference set for 11/18/2014 at 8:30 AM in Courtroom 5B (Jackson) before District Judge Carlton W. Reeves wherein Plaintiffs shall advise the Court how they wish to proceed on their [ ] Motion to Enforce and Modification of Consent Decree pending before the Court. The Court shall then set any deadlines/hearing necessary regarding the motion."). Eventually, and after Plaintiffs informed the Court and counsel of how they wished to proceed on their motion, the Court set the deadlines governing Plaintiff's original modification motion. *See Minute Entry for Status Conference held on 1/8/2015* (Minute Entry for proceedings held before District Judge Carlton W. Reeves: Status Conference held on 1/8/2015 . . . Plaintiffs shall amend their [ ] Motion for Enforcement and Modification of Consent Decree by 1/13/2015, if necessary; Defendants shall respond by 1/27/2015; and Plaintiffs shall file any Rebuttal by 2/2/2015). At the same time, a settlement conference also was scheduled for February 6, 2015. *See Text Order from 1/8/2018 Setting Hearing*. Then, on January 13, 2015, Plaintiffs filed an *amended* memorandum in support of enforcement and modification of the Decree. *See Amended Memorandum, Docket Entry No. [115]*.

In crafting their factual predicate in the response, Plaintiffs make it appear as if Defendant continuously caused, without grounds, a postponement of the hearing on Plaintiffs' motion. For instance, Plaintiffs state Defendant "vehemently opposed an evidentiary hearing, arguing that a hearing would be 'premature,' that Plaintiffs' counsel were 'rushing into court,' and that the hearing should be postponed indefinitely." *See Pl. Resp. at pp. 1-2, Docket Entry No. [133]*. Plaintiffs omit, however, the reason why Defendant initially argued against an

*immediate* hearing, which was due to the Consent Decree. The Decree requires Plaintiffs to first provide written notice of the alleged failure to comply with the Decree to Defendant, and also that the parties submit the dispute to mediation before the magistrate judge assigned to the case. *See Consent Decree, § IV, ¶ 7.* Defendant took no action to prohibit Plaintiffs from proceeding to a hearing on their motion, other than requesting mediation be pursued *first* based on the Decree.

After the Decree properly was followed and this matter was submitted to mediation, many of Plaintiffs' so-called issues raised in their amended motion were mooted, and the parties appeared to be traveling on the course to resolution.[1] By the same token, however, Plaintiffs' motion to modify remained on the table and insistently pursued. That fact, coupled with the current information provided in the Monitors' Sixth Report, led Defendant to file a motion to terminate pursuant to the PLRA. In continuing to pursue modification, Plaintiffs placed before the Court the issue of whether there is a current constitutional violation at Walnut Grove.[2] Because that question can be answered only in the negative, a motion to terminate was necessary, as modification raises the same issue as termination, with Plaintiffs carrying the substantive burden for both.[3]

---

[1] Defendant's motion to terminate in no way alters Defendant's position on mediation. Defendant originally requested mediation, and Defendant will continue to negotiate a resolution in good faith with Plaintiffs. Such negotiations, however, entirely have been halted due to Plaintiffs' one-sided position that no settlement negotiations should take place.

[2] When enforcement or modification already is on the table, some courts have gone so far as to question why the defendant did not move to terminate. *See Lancaster v. Tilton*, 2007 WL 1807825 (N.D. Cal. 2007) ("Defendants have . . . no one to blame but themselves for neglecting to move and to obtain an order under the PLRA to terminate . . ."); *Jones–El v. Berge*, 374 F.3d 541 (7th Cir. 2004); *Essex Cnty. Jail Annex Inmates v. Treffinger*, 18 F. Supp. 2d 445, 462 (D.N.J. 1998).

[3] *See Guajardo v. Texas Dep't of Criminal Justice*, 363 F.3d 392, 395-96 (5th Cir. 2004) (discussing the respective burdens under § 3626(b)(1)(A) and § 3626(b)(3) of the PLRA).

## II. The Relief Ordered and Approved in the Consent Decree is Subject to the Termination Provisions of the PLRA.

Plaintiffs' central retort to the instant motion is the same argument Plaintiffs apparently intend to urge in response to Defendant's motion to terminate. Plaintiffs attempt to evade termination by imploring this Federal Court to cast aside the very federal law it recognized when ordering and approving the Consent Decree. While Plaintiffs' argument is a convenient one, it is disingenuous and inapt.[4]

According to Plaintiffs, the Consent Decree waives Defendant's ability to move to terminate under the PLRA. That is not so. Plaintiffs' argument for waiver centers on the fact that the Decree contains instructions for termination. The Decree's termination provision, however, is supplementary to the requirements of federal law—and the application of one does not negate the other. That is, the inclusion of additional avenues to get termination does not invalidate the separate paths for reaching termination provided by federal law. Instead, while the Decree provides one tool for termination, the PLRA supplies another. A complete reading of the Decree and a straightforward contractual analysis of its terms confirm just this.

There is not a single provision in the Decree waiving any rights provided by or requirements of the PLRA. Nor is there a provision in the Decree contractually barring the Defendant from seeking termination under federal law. To the contrary, the pertinent Consent Decree ordered and approved by this Court in 2012 explicitly incorporates all of the provisions and requirements of the PLRA. This encompasses the PLRA's requirements for termination. By endeavoring to read the PLRA out of the Consent Decree, Plaintiffs are attempting only to transform the Decree into something for which they originally did not bargain. This attempt,

---

[4] By arguing against PLRA waiver in the instant reply memoranda, Defendant does not waive the right to raise additional arguments in its termination reply brief.

however, fails from the start, as the instant Decree expressly preserves, not waives, the PLRA's applicability.

An analysis of applicable federal law only validates why Plaintiffs' argument is a non-starter. The chief focus of the PLRA is to limit the application and/or continuance of prospective relief when there is no current violation of federal law. The Consent Decree, without dispute, is a form of prospective relief governed by 18 U.S.C. §§ 3626(a) and (c) of the PLRA. These provisions of federal statutory law impose limitations upon the court's ability to enter and maintain prospective relief, which are not subject to waiver or consent of the parties. Specifically, § 3626(c)(1), the provision governing consent decrees, provides that "*the court shall not* enter or approve a consent decree unless it complies with the limitations on relief set forth in [§ 3626(a)]." Section 3626(a), in turn, provides that "relief . . . shall extend no further necessary than to correct the violation of the Federal right." These provisions work together to disallow the approval of such prospective relief without a finding of a current federal violation.

The entry or approval of such prospective relief under Subsections (a) and (c) cannot be waived in scope or in time, as the outgrowth of Subsection (a)'s entry of prospective relief is Subsection (b)'s requirements for termination of that relief. When the reason for the grant of the relief (*i.e.*, a "violation of [a] Federal right") no longer exists, the PLRA mandates that the relief not continue. *See* 18 U.S.C. §§ 3626(b)(1)(A), (b)(3); *Ruiz v. United States*, 243 F.3d 941, 943 (5th Cir. 2001); *Hadix v. Caruso*, 420 F. App'x 480, 489 (6th Cir. 2011) ("The PLRA precludes the grant or continuation of injunctive relief in the absence of a finding of a constitutional violation.").

Plaintiffs' pursuit of an argument that asks this Court not to apply the PLRA only circumvents federal law. By arguing the PLRA is waived, Plaintiffs request that this Court deny

Defendant's motion to terminate, even if there is no current and ongoing constitutional violation. Such a result would erode the objectives of the PLRA, run afoul of its limitations, and serve only to contort the plain language of the instant Decree. A complete reading of the Decree and a straightforward contractual analysis of its provisions, coupled with clear directives from federal law, compel a result contrary to the one advanced by Plaintiffs. The PLRA's requirements govern this action and dictate the result to be reached on the motions urged by both Plaintiffs and the Defendant.

A.  **A Straightforward and Complete Reading of the Consent Decree Requires Application of the PLRA.**

Plaintiffs inform the Court that the Consent Decree contains a provision governing termination that serves to preclude the application of the PLRA. This is incorrect. The Consent Decree provides an avenue for reaching termination, but so too does federal law. Because Plaintiffs present the Court with only a snapshot of the Decree, Defendant supplies the rest of the picture.

As Plaintiffs suggest, the Decree contains a termination provision that reads as follows:

(8) The Consent Decree will terminate five years from the date it is filed with the Court. The Consent Decree may also terminate earlier than five years from the date it is filed with the Court if the Court determines that MDOC substantially complied with each of the provisions of the Consent Decree and has continuously maintained substantial compliance for at least two years. Noncompliance with mere technicalities, or a brief lapse in compliance during a period of otherwise sustained compliance, will not constitute failure to maintain substantial compliance. The Court may extend this Consent Decree and/or any of its provisions twice, and each extension may be no longer than one year upon a finding that MDOC failed to substantially comply.

*See Consent Decree, § IV, ¶ 8, Docket Entry No. [75-3], also attached hereto as Ex. A.* While Plaintiffs end with this provision, the Decree does not. The Consent Decree first explicitly notes that it is a form of "prospective relief." *See Consent Decree, § IV, ¶ 4.* Unmistakably, then, the

6

PLRA is at play from the outset. *See* 18 U.S.C. §§ 3626(a), (c). The Decree also goes on to couch all of its terms in the context of the PLRA. Specifically, the Decree directs that "[t]he parties agree that . . . **all terms and conditions of this Consent Decree will be construed in accord with federal law, including the Prison Litigation Reform Act**." *See id.* at § IV, ¶ 4 (emphasis supplied); *see also id. at § II* ("The terms and requirements of this Consent Decree will be interpreted . . . consistent with applicable federal law.").

Similarly, the Decree provides that "[n]othing in this Decree alters the requirements of the Prison Litigation Reform Act . . . ." *See id.* at § IV, ¶ 6. The Court's Order approving and ordering the relief provided through the Decree echoes this point. The Order provides, in pertinent part, that "nothing . . . alters the requirements of the Prison Litigation Reform Act." *See Order, Docket Entry No. [75], ¶ 11.* A requirement of Section 3626(b) of the PLRA is that relief be "terminable" under specific delineated circumstances. *See, e.g., Ruiz v. United States*, 243 F.3d 941, 943 (5th Cir. 2001) ("Courts may refuse to terminate prospective relief *only* upon making specific findings regarding the continued necessity of such relief."); *Guajardo v. Texas Dep't of Criminal Justice*, 363 F.3d 392, 394 (5th Cir. 2004) ("Institutional consent decrees are not intended to operate in perpetuity . . . The PLRA strongly disfavors continuing relief through the federal courts; indeed, its fundamental purpose was to extricate them from managing state prisons . . . The PLRA provides three methods for terminating such consent decrees: (1) the passage of time . . .") (internal quotations removed); *Castillo v. Cameron Cnty., Tex.*, 238 F.3d 339, 354 (5th Cir. 2001). Per the Decree's express language, as well as this Court's Order, the PLRA's requirements, including termination, remained altogether unaltered by the Decree.

**B.** **A Contractual Analysis of the Decree Confirms that the PLRA's Termination Provisions Apply.**

Viewing the terms of the Decree from the perspective of a contractual inquiry only bolsters the conclusion that Defendant properly has invoked § 3626(b) of the PLRA. In *Frew v. Janek,* No. 14-40048, 2015 WL 968015 (5th Cir. Mar. 5, 2015), the Fifth Circuit recently explained as follows:

> Consent decrees are construed according to general principles of contract interpretation. The primary concern of a court in construing a written contract is to ascertain the true intentions of the parties *as expressed in the instrument.* Thus, courts examine the unambiguous language in a contract and enforce the objective intent evidenced by the language used. This reliance on the written terms must include consideration of *all* the terms: [C]ourts should examine and consider *the entire writing* in an effort to harmonize and give effect to *all the provisions* of the contract so that none will be rendered meaningless. Indeed, courts must be particularly wary of isolating from its surroundings or considering apart from other provisions a single phrase, sentence, or section of a contract.

*Id.* (internal quotations omitted) (emphasis in original). As the *Frew* court also recognized, federal courts "look to state law to provide the rules of contract interpretation." *Id.* (citing *Clardy Mfg. Co. v. Marine Midland Bus. Loans Inc.,* 88 F.3d 347, 352 (5th Cir. 1996)). Mississippi state law falls in line with the analysis enunciated in *Frew.*

Mississippi applies a three-tiered approach to contract interpretation. *Tupelo Redev. Agency v. Abernathy,* 913 So. 2d 278, 284 (¶ 13) (Miss. 2005). First, the court looks to the "four corners" of the contract and examines the language used. *Id.* The parties' "intent should first be sought in an *objective* reading of the words employed in the contract to the exclusion of parol or extrinsic evidence." *Facilities, Inc. v. Rogers–Usry Chevrolet, Inc.,* 908 So. 2d 107, 111 (¶ 7) (Miss. 2005). The court determines "the parties' intent from 'the meaning of the language used, not the ascertainment of some possible but unexpressed intent of the parties.'" *Favre Prop. Mgmt., LLC v. Cinque Bambini, a Miss. P'ship,* 863 So. 2d 1037, 1045 (¶ 21) (Miss. Ct. App.

2004) (quoting *Cherry v. Anthony, Gibbs, Sage,* 501 So. 2d 416, 419 (Miss. 1987)). "'Particular words should not control,' rather, the court reads the contract as a whole, **so as to give effect to all of its clauses**." *WMS Indus., Inc. v. Fed. Ins. Co.*, No. 1:06CV977-LG-JMR, 2009 WL 2408833, at *3-4 (S.D. Miss. Aug. 4, 2009) *aff'd*, 384 F. App'x 372 (5th Cir. 2010) (citing *Pursue Energy Corp. v. Perkins,* 558 So. 2d 349, 352 (Miss. 1990); *Favre,* 863 So. 2d at 1046 (¶ 24) (emphasis supplied)); *Taylor v. Detroit Diesel Realty, Inc.,* No. 3:12-CV-506-CWR-LRA, 2014 WL 1794582, at *7-8 (S.D. Miss. May 6, 2014). If the first tier of the process does not resolve the parties' intent, the court moves to the second tier and applies discretionary canons of construction. *Pursue Energy,* 558 So. 2d at 352. If the contract still evades clarity, the court moves to the final tier and considers extrinsic evidence. *Taylor*, 2014 WL 1794582; *Facilities,* 908 So. 2d at 111 (¶ 7).

**First Tier: Objective Reading of the Entire Decree.** Plaintiffs' tactic of selectively picking and choosing which provisions of the Decree to apply and which to ignore does not get them where they need to go on termination. This is because federal and state law both require the Decree to be read as a whole. Reading Paragraph (8) of the Decree as the only method of termination would render meaningless the provisions of the Decree implicating the PLRA. As noted, the Decree requires that "all terms and conditions [ ] be construed in accord with federal law, including the Prison Litigation Reform Act." Further, the Decree explicitly left intact the PLRA's requirements. The PLRA requires that prospective relief be terminable (*i.e.*, "shall be terminable") two years after it was entered or approved upon motion by any party or intervener. *See* 18 U.S.C. § 3626(b)(1)(A)(i).

To read the Decree "in accord with" the PLRA requires that the Decree be read to supplement, not supplant, the PLRA's termination requirements. Any other reading, in fact,

would be one that construes the Decree as *inconsistent* with federal law, as federal law sets forth separate and distinct pathways to termination other than those in the Decree.[5]  Moreover, the only way to "harmonize and give effect to all the provisions of the contract" is to allow both for contractual termination per the Decree as well as termination per applicable federal law.

**Additional Tiers: Extrinsic Evidence**.  Even if the Court were to move beyond the language of the Decree to the other tiers of the contractual analysis,[6] the result would remain the same. A consideration of extrinsic evidence reveals only Plaintiffs' recognition of the PLRA's application to termination. Prior to the Court ordering and approving the relief in the Decree, a fairness hearing was held.  During this hearing, the Court questioned the Plaintiffs concerning the termination provisions of the Decree as follows:

> THE COURT: Okay. I have a couple of questions about the agreement. As I've read, it's a <u>five year term</u>. Is that not – is that correct?
>
> MS. BEDI:    That is correct. That is correct. Now, *we have some restrictions based on <u>the Prison Litigation Reform Act</u>*, ***and*** if the state can show that there was continuance [sic] <u>compliance</u> for two years and the court finds that to be the case, the agreement could terminate before five years.

*See Transcript of Fairness Hearing at 47:13-20, Ex. B*.  As Plaintiffs' statement to this Court confirms, there are three paths to termination. The Decree terminates automatically in five years, the PLRA imposes its own requirements for termination where there is no current and ongoing constitutional violation, and separately there is a path to termination through compliance with the Decree's provisions.  From this, there is no doubt that Plaintiffs were aware that the Decree did not alter the PLRA's so-called "restrictions" governing termination of prospective relief.  This

---

[5] As noted in Defendant's motion to terminate, compliance with a decree and the lack of a current and ongoing violation are entirely distinct analyses. The Decree provides its own two paths to termination: (i) automatic after five years, and (ii) termination due to substantial compliance before five years. The PLRA, however, mandates termination unless Plaintiffs can prove a current and ongoing violation of a federal right.

[6] How federal law construes consent decrees in the context of the PLRA is discussed *infra*.

also is why language explicitly *not* waiving the PLRA is found in the Decree, in more than one place. Thus, Plaintiffs' PLRA waiver argument cannot legitimately be pursued.

Further, the Decree's entire purpose was to provide relief to remedy purported ongoing violations of federal rights. *See Consent Decree, § II; § IV, ¶* 4; 18 U.S.C. § 3626(a) ("Prospective relief in any civil action with respect to prison conditions shall extend no further than necessary to correct the violation of *the Federal right*"). Because the underlying violation of the "federal right" no longer exists, the relief provided in the decree no longer is "necessary." When the reasons for prospective relief under § 3626(a) are removed, § 3626(b) is triggered. Indeed, the termination provisions require that relief convert from "terminable" to terminated when there is no current and going federal violation. *See* 18 U.S.C. §§ 3626(b)(1)(A)(i), (b)(3). The very purpose of the instant Decree recognizes the requirements of the PLRA, and it is beyond cavil that the Decree does not contractually prohibit Defendant from moving to terminate on these grounds.

### C. Federal Law Instructs Against a Waiver of the PLRA's Termination Provisions.

Both contractually and legally, Defendant's termination motion is justified. The additional termination provisions of the PLRA, in fact, only support a reading of the Decree that allows for termination under § 3626(b)(1). The termination provisions of the PLRA provide as follows:

**(b) Termination of relief.—**

**(1) Termination of prospective relief.--(A)** In any civil action with respect to prison conditions in which prospective relief is ordered, such relief shall be terminable upon the motion of any party or intervener--

**(i) 2 years** after the date the court granted or approved the prospective relief;

**(ii)** 1 year after the date the court has entered an order denying termination of prospective relief under this paragraph; or

**(iii)** in the case of an order issued on or before the date of enactment of the Prison Litigation Reform Act, 2 years after such date of enactment.

**(B)** Nothing in this section shall prevent the parties from agreeing to terminate or modify relief before the relief is terminated under subparagraph (A).

**(2) Immediate termination of prospective relief.**--In any civil action with respect to prison conditions, a defendant or intervener shall be entitled to the immediate termination of any prospective relief if the relief was approved or granted in the absence of a finding by the court that the relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right.

**(3) Limitation.**--Prospective relief shall not terminate if the court makes written findings based on the record that prospective relief remains necessary to correct a current and ongoing violation of the Federal right, extends no further than necessary to correct the violation of the Federal right, and that the prospective relief is narrowly drawn and the least intrusive means to correct the violation.

**(4) Termination or modification of relief.**--Nothing in this section shall prevent any party or intervener from seeking modification or termination *before the relief is terminable* under paragraph (1) or (2), *to the extent that modification or termination would otherwise be legally permissible.*

18 U.S.C.A. § 3626(b) (emphasis supplied). While the PLRA provides its own authorization for periodic review of decrees, *see* § 3626(b)(1), it also, in § 3626(b)(4), expressly contemplates the availability of other means to reach termination before the relief becomes "terminable" due to the passage of time. In other words, Subsection (b)(4) recognizes that there are additional tools for termination, other than those in Subsections (b)(1) and (b)(2). An example of such an additional tool is a contractual termination provision inserted into a decree, such as the termination provision in Paragraph (8). Invoking "otherwise legally permissible" mechanisms does not negate or nullify the separate provisions mandating the circumstances under which the relief is "terminable."

Courts have recognized this very point in analyzing the applicability of federal law to consent decrees. The case of *Ne. Ohio Coal. for Homeless v. Husted*, 696 F.3d 580, 601-02 (6th Cir. 2012) particularly is instructive. There, the Sixth Circuit was faced with a consent decree providing that "[a]ny of the parties may file a motion with the Court to modify, extend or terminate this Decree for good cause shown." *Id.* One of the parties argued that this clause constituted a "waiver" of the strictures of Rule 60(b).[7] *Id.* The Sixth Circuit found that it did not, noting as follows:

> While a consent decree "embodies an agreement of the parties and thus in some respects is contractual in nature," it is nonetheless subject to Rule 60(b) because it is "a judicial decree that is **subject to the rules generally applicable to other judgments and decrees**." *Rufo v. Inmates of Suffolk Cnty. Jail,* 502 U.S. 367, 378, 112 S.Ct. 748, 116 L.Ed.2d 867 (1992). The words "good cause shown" do not upset this general presumption. **Even when consent decrees explicitly provide instructions for their own modification, Rule 60(b) governs**. *Cleveland Firefighters for Fair Hiring Practices v. City of Cleveland,* 669 F.3d 737, 741 (6th Cir.2012) ("[A] district court is not merely an instrument of a consent decree or of the parties' stipulations with respect to it," and termination of a decree must be "lawful given not only the decree's terms, but also *the broader legal rules that govern consent decrees*").

*Id.* (emphasis supplied). The *Husted* case was not a prison conditions action, and the consent decree thus fell outside of the PLRA's reach. Due to this, only Rule 60(b) governed modification and termination, as opposed to the PLRA. The logic utilized by the Sixth Circuit, however, fits squarely within the arguments advanced here.

---

[7] Federal Rule of Civil Procedure 60(b) provides as follows: "(b) Grounds for Relief from a Final Judgment, Order, or Proceeding. On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party; (4) the judgment is void; (5) the judgment has been satisfied, released or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or (6) any other reason that justifies relief."

Prior to the enactment of the PLRA, there would be no dispute, even with the wording of the pertinent Decree, that Defendant retained the ability to seek modification or termination of the decree under the common law standards adopted by the Supreme Court in *Rufo* and those in Rule 60. *See Rufo v. Inmates of Suffolk County Jail,* 502 U.S. 367, 383-385, 388-393 (1992). In fact, that is exactly what Plaintiffs have attempted to do through their motion to modify. Nothing in the instant Decree provides Plaintiffs an avenue for "modification." To the contrary, the Decree allows for "enforcement." *See Consent Decree, § IV, ¶ 7.* Due to this, Plaintiffs have turned to federal law, not the Decree, for their modification motion. Just as Plaintiffs have turned to federal law for modification,[8] Defendant may look to federal law for termination.

As in the Sixth Circuit's *Husted* case, even though the instant Decree provides its own separate instructions for termination, the PLRA (like Rule 60) still governs. This point only is heightened in this context. The PLRA requires that relief "*shall* be terminable" upon a motion in "any civil action with respect to prison conditions." *See* 18 U.S.C. Section 3626(b). Rule 60, on the other hand, provides "[o]n motion and just terms, the court *may* relieve a party or its legal representative from a final judgment, order, or proceeding . . ." FED. R. CIV. P. 60(b). The PLRA's language is mandatory ("shall"), and it specifically is applicable to this prison conditions litigation, per the language of the statute and by the terms of the Consent Decree and this Court's Order. Rule 60, however, is discretionary ("may") with general applicability, and with no mention in the instant Decree or the Court's Order.

In enacting the PLRA, Congress exercised its authority to prescribe by statute standards for a court to apply in determining whether to approve, modify, or terminate a prospective order regarding prison conditions. *Miller v. French*, 530 U.S. 327, 347, 120 S. Ct. 2246, 2258, 147 L.

---

[8] As noted in Defendant's motion to terminate and in detail below, Plaintiffs' modification motion already has triggered the PLRA because it asks for "prospective relief." *See* 18 U.S.C. §§ 3626(a), (c), (g)(7), and (g)(9).

Ed. 2d 326 (2000) ("By establishing new standards for the enforcement of prospective relief in §

3626(b), Congress has altered the relevant underlying law."); *Ruiz v. United States*, 243 F.3d

941, 949 (5th Cir. 2001) ("By enacting the termination provisions of the PLRA, Congress has

properly invoked its legislative authority to establish applicable standards and procedural rules

for courts to grant or continue prospective relief regarding prison conditions. Section 3626(b) is

like any other statute in that it establishes a generally applicable legal rule and allows district

courts to apply that rule to the facts of specific cases."). As before the PLRA, Defendant has the

right to seek modification or termination of all or part of the consent decree by invoking federal

law. The only difference is that this motion will be examined under the standards enacted by

Congress in the PLRA, instead of Rule 60/*Rufo*.[9]

What's more is while Plaintiffs' motion to modify expressly invokes *Rufo* (and

purportedly Rule 60(b)), the motion additionally summons the PLRA's mandates, as the relief

sought through the modification motion constitutes "prospective relief." *See, e.g., Lancaster v.

Tilton*, No. C79-01630 WHA, 2007 WL 1807825, at *1-5 (N.D. Cal. June 21, 2007); *United

States v. Territory of the Virgin Islands*, 884 F. Supp. 2d 399, 408-09 (D.V.I. 2012); *Castillo v.

Cameron Cnty., Tex.*, 238 F.3d 339, 354 (5th Cir. 2001) ("[W]e note that any modification of the

_____

[9] *See Ruiz v. United States*, 243 F.3d 941, 943 (5th Cir. 2001) (finding the termination provisions of the PLRA constitutional, that the court failed to adhere to § 3626(b)(3)'s mandates in analyzing the limitation on termination, and analyzing termination only under the PLRA and not Rule 60, as defendants had "dropped" their Rule 60 motion altogether after the PLRA's enactment); *Guajardo v. Texas Dep't of Criminal Justice*, 363 F.3d 392, 394 (5th Cir. 2004) (applying only § 3626(b)); *Gilmore v. California,* 220 F.3d 987, 1007 (9th Cir. 2000) (noting that the PLRA provides a "more exacting standard" for a court to follow than that set forth in *Rufo*); *Shima Baradaran-Robison, Kaleidoscopic Consent Decrees: School Desegregation and Prison Reform Consent Decrees After the Prison Litigation Reform Act and Freeman-Dowell*, 2003 B.Y.U. L. REV. 1333, 1351 (2003) ("The PLRA replaces the *Rufo* . . . with a standard that makes it more difficult to maintain judicial supervision over prison reform consent decrees."); *Plata v. Brown*, 754 F.3d 1070, 1073 (9th Cir. 2014) ("Under the PLRA, a defendant in prison litigation may move to terminate any prospective relief two years after the date the court approved the relief. 18 U.S.C. § 3626(b)(1)(A)(i)"). As noted in Defendant's termination motion, Defendant is not arguing that the PLRA altogether supplants Rule 60. Instead, the PLRA sets forth federal standards specifically applicable to prison conditions litigation, like the one pending before this Court.

existing relief that constituted the entry of new relief would need to meet the requirements set out in § 3626(a)). Indeed, the explicit language of the statute is conclusive on this, as the PLRA defines "prospective relief" as "<u>all relief</u> other than compensatory monetary damages." 18 U.S.C. § 3626(g)(7). "Relief," in turn, is "all relief in any form that may be granted or approved by the court, and includes consent decrees but does not include private settlements." 18 U.S.C. § 3626(g)(9).

To get "prospective relief" under the PLRA, a finding of a violation of a federal right for which such relief extends no further than necessary to correct is required. *See* 18 U.S.C. § 3626(a). Defendant's motion to terminate due to the lack of a current and ongoing violation of a federal right thus only is the flip side of the modification motion. *See Hallett v. Morgan,* 296 F.3d 732, 741–45 (9th Cir.2002) ("The . . . standard for termination does not differ materially from the standard to be applied in deciding whether prospective relief is proper.") (cited with approval in *Guajardo v. Texas Dep't of Criminal Justice*, 363 F.3d 392, 395 (5th Cir. 2004)); *Gilmore v. People of the State of California*, 220 F.3d 987, 1006 (9th Cir. 2000) ("At least in the context of contested decrees, then, the general standard for granting prospective relief differs little from the standard set forth in § 3626(b)(2) for terminating prospective relief, or from the standard set forth in § 3626(b)(3) for preserving relief to correct a current and ongoing violation. The *limits* on federal court jurisdiction are essentially the same—no more than necessary to correct the underlying constitutional violation."). If the Court finds no current violation of a federal right in the context of the modification motion, the PLRA directs for the existing relief not to continue. *See* 18 U.S.C. § 3626(b)(3). Given this, it is impossible to reconcile Plaintiffs' waiver argument with federal law, especially after Plaintiffs have placed the propriety of the existing relief before the Court through modification.

In a similar vein, any argument that Defendant waived its rights under federal law by including separate, albeit additional, provisions for termination simply is unconvincing. To be sure, the Decree is void of *any* provision waiving the PLRA, mandating that the Decree is the only path to termination, or contractually prohibiting Defendant from moving to terminate.[10]  In addition, it is axiomatic that Defendant did not have to contract into the requirements of the PLRA.[11]  That is, Defendant did not have to specifically include a separate PLRA termination provision in the Decree. Indeed, this would be superfluous. The PLRA's requirements flow not from contract, but from statutory law, and its termination provisions expressly apply to "*any* civil action with respect to prison conditions in which prospective relief is ordered . . . ." 18 U.S.C. § 3626(b). The PLRA's termination provisions, in fact, have retroactive application to decrees entered well before the federal law was enacted. *See* 18 U.S.C. § 3626(b)(1)(A)(iii); *Ruiz*, 243 F.3d at 949; *Cagle v. Hutto*, 177 F.3d 253, 257 (4th Cir. 1999) (rejecting the argument that the defendant "was prohibited from seeking termination of the consent decree" because, in accepting the terms of the decree, it "waived" its termination rights, and explaining that such an "argument disregards the fundamental purpose of the PLRA, which was to remove the federal district courts from the business of supervising the day-to-day operation of state prisons"). Termination under the PLRA thus is the status quo since the law's enactment.  Defendant neither bargained away

---

[10] While it is Defendant's position that the PLRA imposes mandates on courts, notwithstanding the parties' purported agreements in a decree, it is clear that litigants know how to insert language into a Decree that could be viewed as an agreement not to terminate. *See Jones-El v. Schneiter*, No. 3:00-cv-00421-bbc, 2006 WL 2168682, at *3 (W.D. Wis. July 31, 2006) (the parties agreed "not to seek to modify or terminate or otherwise challenge th[e] Agreement or any order approving or implementing th[e] agreement."). In fact, the National Prison Project of the ACLU also was involved in the *Jones-El* case. *See id.* Notably, even with this unequivocal agreement, the court in *Jones-El sua sponte* moved to terminate the prospective relief. *Id.* at *4.

[11] An employment contract is comparable. There are certain rights that the law does not provide employees. Termination only for cause is one of them, as Mississippi is an at-will employment state. An employee must contract into being terminated only for cause. An employee, however, does not have to contract into the rights afforded to him or her by Title VII, as federal law (not contract) grants those rights to employees under certain circumstances.

that status quo nor its right to move for termination. This particularly is true given the Decree, on its face, recognizes the PLRA's mandates.[12] By advancing a waiver argument, then, Plaintiffs are attempting, *post hoc*, to insert a provision into the Decree for which they did not bargain.

The very reason the PLRA was enacted lends further support to this. The PLRA plainly imposes limitations upon the remedial authority of a federal court to enter and maintain prospective relief regarding prison conditions that are not subject to waiver or consent of the parties. *See, e.g.,* 18 U.S.C. § 3626(c)(1) (a "court *shall* not enter or approve a consent decree unless it complies with the limitations on relief set forth in [§ 3626(a)]"). As discussed *supra*, Congress clearly intended the limitations imposed by the PLRA's termination provisions to apply to existing prospective orders and consent decrees when any party seeks to modify or terminate the relief. *See* Pub. L. No. 104-134, § 802(b); H.R. Conf. Rep. No. 378 at 166. Section 3626(a)'s limits on the entry of prospective relief and Section 3626(b)'s mandates on termination of that relief work together: one prohibits relief from be entered without a federal violation, and the other limits the relief from continuing absent a federal violation. Notably, Congress still permitted parties to pursue whatever relief they felt was justified in private settlement agreements, *see* § 3626(c)(2), but cautioned that "they cannot expect to rely on the court to enforce the agreement." H.R. Rep. 104-21 at 25.

Congress was concerned, in enacting the PLRA, not just about the rights of defendants, but rather about the burden on courts from overseeing broad-based consent decrees in prison conditions litigation. *See, e.g., Miller v. French,* 530 U.S. 327, 328, 120 S. Ct. 2246, 147 L. Ed. 2d 326 (2000) (explaining that "curbing the equitable discretion of district courts was one of the

---

[12] Under Plaintiffs' rationale, a provision in a contract providing additional contractual rights (*i.e.*, additional paths to termination) automatically invalidates separate rights provided under federal law (*i.e.*, PLRA paths to termination). Such a reading not only would deal a significant blow to the PLRA, but also to the law governing consent decrees in general.

PLRA's principal objectives. . . ."); *Gilmore v. California,* 220 F.3d 987, 991 (9th Cir. 2000); *Inmates of Suffolk Cnty. Jail v. Rouse,* 129 F.3d 649, 655 (1st Cir. 1997) ("Congress passed the PLRA in an effort, in part, to oust the federal judiciary from day-to-day prison management."); *United States v. Territory of the Virgin Islands*, 884 F. Supp. 2d 399 (D.V.I. 2012); *Guajardo v. Texas Dep't of Criminal Justice*, 363 F.3d 392, 394 (5th Cir. 2004). Indeed, as one court put it, "the PLRA ***abrogates*** a court's ability to continue a consent decree in the absence of ongoing federal violations." *Jones-El v. Schneiter*, No. 00-C-421-C, 2006 WL 2168682, at *4 (W.D. Wis. July 31, 2006).[13] Given the objectives of the PLRA, it hardly can be argued that a Consent Decree ordered and approved under §§ 3626(a) and (c) of the PLRA is not subject to termination under § 3626(b) when there is nothing in the Decree waiving the PLRA's mandates (assuming *arguendo* that even is possible), or otherwise contractually prohibiting Defendant from moving to terminate pursuant to federal law. Simply put, to read the PLRA out of this Consent Decree when it expressly is invoked would run contrary to the provisions of the PLRA and collide with the statute's very purpose.

## III.     A Grant of Defendant's Consolidation Motion is Warranted.

Upon the filing of Defendant's motion to terminate, the relief ordered and approved in the 2012 Decree became "terminable" pursuant to the pertinent provisions of the PLRA. *See* 18 U.S.C. § 3626(b)(1)(A)(i). The only way the relief will not convert from terminable to terminated is if Plaintiffs meet their limitation burden under 18 U.S.C. § 3626(b)(3). If the hearings, and/or at least the issues, are not consolidated, Plaintiffs will be asking the Court on April 1, 2015 to enforce already "terminable" relief, while at a later hearing attempting to show

---

[13] *See also, e.g., Inmates of Suffolk County Jail v. Rouse*, 129 F.3d 649 (1st Cir. 1997) ("The termination of a consent decree in response to the PLRA, therefore, merely effectuates Congress's decision to divest district courts of the ability to construct or perpetuate prospective relief when no violation of a federal right exists.").

why that same relief should not be terminated in the first instance.[14]  This capsizes the analysis.

Indeed, it is analogous to asking the Court to rule on damages prior to deciding jurisdiction.  Not

only legally, but logically, the relief *first* must be not terminated before it either may be

continued or enforced.[15]

The PLRA's stay provisions, an issue altogether ignored by Plaintiffs, only further

exemplify this.  The PLRA contains a stay provision that was ignited automatically upon the

filing of Defendant's termination motion.  Specifically, 18 U.S.C. § 3626(e) provides as follows:

**(e) Procedure for motions affecting prospective relief.—**

**(1)  Generally.**--The court shall promptly rule on any motion to modify or
terminate prospective relief in a civil action with respect to prison conditions.
Mandamus shall lie to remedy any failure to issue a prompt ruling on such a
motion.

**(2)  <u>Automatic</u> stay.**--Any motion to modify or <u>terminate</u> prospective relief made
under subsection (b) <u>shall</u> operate as a stay during the period—

**(A)(i)** <u>beginning on the 30th day after such motion is filed, in the case of a motion
made under paragraph (1) or (2) of subsection (b);</u> or

**(ii)** beginning on the 180th day after such motion is filed, in the case of a motion
made under any other law; and

**(B)** ending on the date the court enters a final order ruling on the motion.

---

[14] Plaintiffs' oppositional response touches on a similar point. Plaintiffs contend that the "waste,
expense, and duplication of preparation time involved in once more postponing the hearing would be
staggering."  *See Pl. Resp. at p. 4, Docket Entry No. [133].*  This rationale is why a so-called "all in one"
approach was pursued by Defendant. The only result that will come from having piecemeal hearings on
the various pending issues is "waste, expense, and duplication of preparation of time" – along with
duplication of many issues.

[15] *See, e.g., Hadix v. Caruso*, 420 F. App'x 480, 489 (6th Cir. 2011) ("[I]n light of our
determination that the district court did not err in concluding that there was no longer an ongoing
violation of the Eighth Amendment, we need not address the plaintiffs' argument that the district court
erred in failing to modify or find a breach of the Consent Decree. The PLRA precludes the grant or
continuation of injunctive relief <u>in the absence of a finding of a constitutional violation</u>. Finally, because
the district court determined that there is no "current and ongoing" constitutional violation, we need not
address the plaintiffs' argument that the district court made clearly erroneous findings of fact regarding
the defendants' efforts to comply with the 2006 injunction.").

**(3) Postponement of automatic stay.**--The court may postpone the effective date of an automatic stay specified in subsection (e)(2)(A) for not more than 60 days for good cause. No postponement shall be permissible because of general congestion of the court's calendar.

**(4) Order blocking the automatic stay.**--Any order staying, suspending, delaying, or barring the operation of the automatic stay described in paragraph (2) (other than an order to postpone the effective date of the automatic stay under paragraph (3)) shall be treated as an order refusing to dissolve or modify an injunction and shall be appealable pursuant to section 1292(a)(1) of title 28, United States Code, regardless of how the order is styled or whether the order is termed a preliminary or a final ruling.

*Id.* Section 3626(e)(2)(A)(i) applies here. Thirty days from the day Defendant's termination motion was filed, the very relief Plaintiffs seek to enforce will be *stayed* absent the requisite findings under § 3626(e)(3). Even then, though, the stay only will be postponed. Thus, Plaintiffs' oppositional response asks this Court to enforce relief that, shortly after such purported enforcement, will be stayed, and eventually should be terminated.

Plaintiffs' incorrect attempt at bypassing the PLRA, something the Consent Decree itself disallows, also is not grounds for a denial of the present motion. If anything, Plaintiffs' argument demonstrates why all of these matters need to be considered at one time, as Plaintiffs' oppositional response inserts an added intertwined (yet meritless) dispute into the case. The issues of enforcement, modification, termination, automatic stay, and the PLRA's application all go hand in hand, and none of them are suitable to being divorced from the others. Some of the issues, in fact, are directly dependent upon how this Court rules on the others. This precisely is why Defendant moved for consolidation (and a continuance) of the varying motions, and why a grant of this motion continues to remain justified.

Dated: March 24, 2015.

Respectfully submitted,

BY:  JIM HOOD, ATTORNEY GENERAL
     STATE OF MISSISSIPPI

/s/ Harold E. Pizzetta III
HAROLD E. PIZZETTA, III, MSB # 9752
ASSISTANT ATTORNEY GENERAL
 STATE OF MISSISSIPPI
OFFICE OF THE ATTORNEY GENERAL
Post Office Box 220
Jackson, MS   39205
hpizz@ago.state.ms.us

/s/ Krissy C. Nobile
 KRISSY C. NOBILE, MSB # 103577
SPECIAL ASSISTANT ATTORNEY GENERAL
STATE OF MISSISSIPPI
OFFICE OF THE ATTORNEY GENERAL
Post Office Box 220
Jackson, MS   39205
knobi@ago.state.ms.us

/s/Gary E. Friedman
GARY E. FRIEDMAN, MS BAR NO. 5532
W. THOMAS SILER, JR., MB #6791
G. TODD BUTLER, MS BAR NO. 102907
PHELPS DUNBAR, LLP
Post Office Box 16114
Jackson, Mississippi 39236-6114
Telephone: 601-352-2300
friedmag@phelps.com
silert@phelps.com
butlert@phelps.com

ATTORNEYS FOR DEFENDANT

<u>**CERTIFICATE OF SERVICE**</u>

I, Krissy C. Nobile, do hereby certify that on March 24, 2015, I electronically filed the above and foregoing with the Clerk of the Court using the CM/ECF system which sent notification of such filing to the following counsel of record:

Sheila A. Bedi
SOUTHERN POVERTY LAW CENTER
753 N. Congress Street
Jackson MS 39202
(601) 948-8882

Jacob W. Howard
MCDUFF & BYRD
767 North Congress
Jackson MS 39202
(601) 969-0802
jake@mcdufflaw.com

Jennie S.H. Eichelberger
SOUTHERN POVERTY LAW CENTER
111 East Capitol Street, Suite 280
Jackson MS 39201
(601) 948-8882
jennie.eichelberger@spcenter.org

Jody E. Owens, II.
SOUTHERN POVERTY LAW CENTER
921 North President Street, Suite B
Jackson MS 39202
(601) 948-8882
jody.owens@splcenter.org

Margaret Winter
NATIONAL PRISON PROJECT OF THE ACLU
915 15th Street, N.W., 7th Floor
Washington D.C. 20005
(202) 548-6605
mwinter@npp-aclu.org

Robert B. McDuff
MCDUFF & BYRD
767 North Congress Street
Jackson, MS 39202
601/969-0802
Fax: 601/969-0804
Email: RBM@McDuffLaw.com
ATTORNEY TO BE NOTICED

ATTORNEYS FOR PLAINTIFFS

/s/ Krissy C. Nobile
KRISSY C. NOBILE