| | | |
|---|---|---|
| **C.B. by and through his** | ) | |
| **next friend, Charleston DePriest, et al.** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | **Civil Action No. 3:10cv663-CWR-FKB** |
| **v.** | ) | |
| | ) | |
| **WALNUT GROVE CORRECTIONAL** | ) | |
| **AUTHORITY, et al.** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

## OPPOSITION TO DEFENDANTS' MOTION TO TERMINATE PROSPECTIVE RELIEF

### INTRODUCTION

Defendants' Motion to Terminate Prospective Relief is a repudiation of the explicit provisions regarding termination in the settlement agreement by which Defendants agreed to be bound; and which the Court, after an evidentiary hearing on fairness, approved, adopted, and entered as a Consent Decree, retaining jurisdiction to enforce it. In the nearly twenty years since the enactment of the Prison Litigation Reform Act, no court, so far as Plaintiffs' research has disclosed, has ever countenanced conduct like that of the Defendants in this case.

Nevertheless, Plaintiffs do not contest Defendants' decision to move for termination under the provisions of the PLRA, rather than under the termination provisions specified in the Consent Decree. Plaintiffs will meet the PLRA standard at the evidentiary hearing calendared for April 1-3, 2015, by proving that prospective relief remains necessary to correct a current and ongoing violation of their Eighth Amendment right not to be subjected to a substantial risk of violence

and excessive force. Following the hearing, if the Court makes findings based on the record that prospective relief remains necessary to correct a current and ongoing violation, the Court must modify the existing relief by entering a new order, extending no further than necessary to correct that Eighth Amendment violation, and narrowly drawn and the least intrusive means to correct the violation. *See* 18 U.S.C. § 3626(b)(3).

Because the termination provision of the PLRA requires that Plaintiffs be afforded an adequate opportunity to prove the existence of current and ongoing violations of their right to constitutionally adequate medical and mental health care, in response to the Defendants' Motion to Terminate those provisions, the Court should hold a status conference at an appropriate time following the April 2015 hearing, in order to schedule discovery and an evidentiary hearing on medical and mental health care issues. The Court should thereafter make findings based on the record as to whether there is a current and ongoing violation of Plaintiffs' right to constitutionally adequate medical and mental health care. If the Court finds that such a violation exists, it should order the least intrusive, most narrowly-tailored prospective relief needed to remedy the violation.

Because Plaintiffs do not contest the application of the PRLA standard for termination, including the automatic stay provision, the propriety of Defendants' Motion to Terminate is a moot question. The question remaining is whether the Court should grant Defendants' Motion to delay the hearing on the issue of violence. The Court should deny that motion, since Plaintiffs would be greatly prejudiced by delay and Defendants have not identified any prejudice from denial of their motion.

**ARGUMENT**

**I.  PROSPECTIVE RELIEF REMAINS NECESSARY TO CORRECT A CURRENT AND ONGOING VIOLATION OF PLAINTIFFS' EIGHTH AMENDMENT RIGHT NOT TO BE SUBJECTED TO A SUBSTANTIAL RISK OF VIOLENCE AND EXCESSIVE FORCE.**

Defendants concede that under the PLRA the Court must not terminate relief if it makes findings based on the record that there is a current and ongoing violation of Plaintiffs' federal rights  pursuant to 18 U.S.C. §3626(b)(3).  (Def. Mem. Supp. Mot. to Terminate, ECF No. 130 at 10-11).  A district court cannot terminate or refuse to grant prospective relief necessary to correct a current and ongoing violation, so long as the relief is tailored to the constitutional minimum. 18 U.S.C. §3626(b)(3) ("Prospective relief shall not terminate if the court makes written findings based on the record that prospective relief remains necessary to correct a current and ongoing violation of the Federal right, extends no further than necessary to correct the violation of the Federal right, and that the prospective relief is narrowly drawn and the least intrusive means to correct the violation.").  Before ruling on a motion to terminate, therefore, the district court must inquire into current prison conditions unless plaintiffs do not contest the termination motion.

Plaintiffs will prove at the evidentiary hearing on their Motion to Enforce and Modify the Consent Decree that Defendants are deliberately indifferent to Plaintiffs' Eighth Amendment right not to be subjected to substantial risks of serious harm from violence.[1]  That is the Eighth Amendment standard announced by the Supreme Court in *Farmer v. Brennan*, 511 U.S. 825, 833-34 (1994), and applied by the Fifth Circuit in *Gates v. Cook*, 376 F.3d 323 (2004):

---

[1] Plaintiffs have presented ample evidence of current and ongoing constitutional violations to justify an evidentiary hearing. *See, e.g.*, Status Report of Eldon Vail (Feb. 10, 2015) (ECF No. 120); Status Report of Eldon Vail (Aug. 4, 2014) (ECF No. 105); Amended Memorandum in Support re 106 Motion for Enforcement and Modification of Consent Decree (Jan. 13, 2015) (ECF No 115). *See also*, Report of Madeline LaMarre's Report (Dec. 2, 2014) (ECF No. 108) (re medical care).

A prison official has violated the Eighth Amendment when he 1) shows a subjective deliberate indifference to 2) conditions posing a substantial risk of serious harm to the inmate. *Farmer*, 511 U.S. at 833-34[.] Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence, and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious. *Id.* at 842[.]

Conditions of confinement may establish an Eighth Amendment violation 'in combination' when each would not do so alone, but only when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need such as food, warmth, or exercise - for example, a low cell temperature at night combined with a failure to issue blankets. *Wilson v. Seiter*, 501 U.S. 294, 304 [(1991)]. . . .

It is also important to note that the inmate need not show that death or serious illness has occurred. [*Helling v. McKinney*, 509 U.S. 25, 32 (1993)] ('It would be odd to deny an injunction to inmates who plainly proved an unsafe, life-threatening condition in their prison on the ground that nothing yet had happened to them.').

*Gates*, 376 F.3d at 333.

Defendants argue that they have recently made changes that make prospective relief unnecessary. Even if it were true -- and it is not -- that Defendants have now abandoned their unconstitutional practices, prospective relief would still be necessary. Those practices have persisted for years, and Defendants' claim that they have changed their ways does not moot the issues. "A good or lucky day is not a state of compliance. Nor is the dubious state in which a past . . . problem is not recurring at the moment but the cause of that problem has not been completely and clearly eradicated." *Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Foundation, Inc.*, 484 U.S. 49, 69 (1987) (Scalia, J., concurring). As the Fifth Circuit observed in *Gates v. Cook,* with respect to the Mississippi State Department of Corrections' contention that it had recently abandoned the practices that the prisoners challenged,

It is well settled that a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the

practice. . . . The fact that many of these conditions have persisted for years despite MDOC's purported efforts leads us to likewise conclude that MDOC has not met the heavy burden of showing that its voluntary conduct has mooted any of the issues presented here.

*Gates*, 376 F.3d at 337. The Court ruled that MDOC's assurance that it was "already on the path towards compliance is insufficient to moot the issue." *Id.* at 342–43. *See also Gates v. Collier*, 501 F.2d 1291, 1321 (1974) ("Changes made by defendants after suit is filed do not remove the necessity for injunctive relief, for practices may be reinstated as swiftly as they were suspended."). *See also Morales Feliciano v. Rullan*, 378 F.3d, 54 (1st Cir. 2004) (noting that "[h]owever laudable the advances may be, the district court's supportable finding that constitutional violations persist suffices to satisfy the requirements of the PLRA").

If this Court finds at the evidentiary hearing on Plaintiffs' Motion to Enforce and Modify the Consent Decree that there are current and ongoing violations of Plaintiffs' constitutional rights it will have the authority and the duty to make any modification or amendment to the existing Consent Decree as may be necessary to protect those rights, so long as the modified remedy extends no further than necessary and is the narrowest and least intrusive remedy to protect those rights. The Supreme Court has recently reiterated, in the context of approving an extraordinary prisoner-release order to relieve overcrowding, that if prospective relief remains necessary to correct a current and ongoing violation, the district court's authority to modify the existing prospective relief includes authority to expand or diminish the existing relief:

> The three-judge court . . . retains the authority, and the responsibility, to make further amendments to the existing order or any modified decree it may enter as warranted by the exercise of its sound discretion. 'The power of a court of equity to modify a decree of injunctive relief is long-established, broad, and flexible.' *New York State Assn .for Retarded Children, Inc. v. Carey*, 706 F. 2d 956, 967 (C.A.2 1983) (Friendly, J.). A court that invokes equity's power to remedy a constitutional violation by an injunction mandating systemic changes to an institution has the continuing duty and responsibility to assess the efficacy and consequences of its order. [*Id.* at 969–71.] Experience may teach the necessity for

modification or amendment of an earlier decree. To that end, the three-judge court must remain open to a showing or demonstration by either party that the injunction should be altered to ensure that the rights and interests of the parties are given all due and necessary protection.

*Brown v. Plata*, __ U.S.__, 131 S. Ct. 1910, 1946 (2011). "In exercising their prospective powers under *Ex parte Young* [209 U.S. 123 (1908)] and *Edelman v. Jordan* [415 U.S. 651 (1974)], federal courts are not reduced to issuing injunctions against state officers and hoping for compliance. Once issued, an injunction may be enforced." *Hutto v. Finney*, 437 U.S. 678, 687, 690 (1978) (where prison officials had been given repeated opportunities to remedy unconstitutional conditions, the district court was justified in "entering a comprehensive order to insure against the risk of inadequate compliance," and "[i]n fashioning a remedy, the District Court had ample authority to go beyond earlier orders and to address each element contributing to the violation.")

## II. PLAINTIFFS MUST BE ALLOWED AN ADEQUATE OPPORTUNITY TO OPPOSE DEFENDANTS' MOTION TO TERMINATE PROSPECTIVE RELIEF WITH RESPECT TO MEDICAL AND MENTAL HEALTH CARE.[2]

With respect to issues relating to medical care, Defendants concede that a continuance is necessary to prepare for an evidentiary hearing since medical care is not an issue raised by Plaintiffs' motion. (Def. Mem. Supp. Mot. to Terminate, ECF No. 130 at 3.) Plaintiffs are entitled to a reasonable period of time for full discovery on those issues, to afford them an opportunity to prove a current and ongoing violation of Plaintiffs' right to a constitutionally adequate system of medical and mental health care. Since prospective relief will be automatically stayed thirty days after Defendants' Motion by operation of law (or in 90 days if the Court finds

---

[2] Defendants' contention that the Consent Decree makes no provision for mental health care is inaccurate. The Decree has provisions on Suicide Prevention, ECF No. 75-3 at 9-11, and provides furthermore that Walnut Grove "will not be used for long-term housing of prisoners with Serious Mental Illness. Prisoners with Serious Mental Illness must be transferred to a facility where they will receive appropriate mental health treatment." *Id.* at 11.

good cause), Defendants will not be prejudiced by postponement of that hearing until Plaintiffs have had adequate opportunity for discovery.

**III.     SINCE PLAINTIFFS DO NOT CONTEST APPLICATION OF THE PLRA STANDARD FOR TERMINATION THERE IS NO BASIS FOR DELAYING THE EVIDENTIARY HEARING ON VIOLENCE; DELAY WOULD SEVERELY PREJUDICE PLAINTIFFS, AND DEFENDANTS WOULD SUFFER NO PREJUDICE FROM DENIAL OF THE CONTINUANCE THEY SEEK.**

Because Plaintiffs do not contest the application of the PLRA standard for termination rather than the Consent Decree standard, the parties' dispute over the propriety of Defendants'' motion is a moot question. Nor do Plaintiffs' contest that the PLRA's automatic stay provision applies, and that all prospective relief will be automatically stayed thirty days (or ninety days if the Court finds good cause) after Defendants filed their Motion. *See* 18 U.S.C. § 3626(e).[3]

The question remaining is whether the Court should grant Defendants' Motion to delay the hearing on violence until it can be heard together with the medical and mental health issues. District courts have extremely wide latitude in making case management decisions, including scheduling and consolidation matters. *See, e.g., Ctr. for Biological Diversity, Inc. v. BP Am.*

---

[3] 18 U.S.C. § 362(e), Procedure for Motions Affecting Prospective Relief, provides: (1) Generally.— The court shall promptly rule on any motion to modify or terminate prospective relief in a civil action with respect to prison conditions. Mandamus shall lie to remedy any failure to issue a prompt ruling on such a motion.

(2) Automatic stay.— Any motion to modify or terminate prospective relief made under subsection (b) shall operate as a stay during the period—

(A)(i) beginning on the 30th day after such motion is filed, in the case of a motion made under paragraph (1) or (2) of subsection (b); or (ii) beginning on the 180th day after such motion is filed, in the case of a motion made under any other law; and

(B) ending on the date the court enters a final order ruling on the motion.

(3) Postponement of automatic stay.— The court may postpone the effective date of an automatic stay specified in subsection (e)(2)(A) for not more than 60 days for good cause. No postponement shall be permissible because of general congestion of the court's calendar.

(4) Order blocking the automatic stay.--Any order staying, suspending, delaying, or barring the operation of the automatic stay described in paragraph (2) (other than an order to postpone the effective date of the automatic stay under paragraph (3)) shall be treated as an order refusing to dissolve or modify an injunction and shall be appealable pursuant to section 1292(a)(1) of title 28, United States Code, regardless of how the order is styled or whether the order is termed a preliminary or a final ruling.

*Prod. Co.,* 704 F.3d 413, 432 (5th Cir. 2013) ("The trial court's managerial power is especially strong and flexible in matters of consolidation."); *Douglas v. Houston Housing authority* (5th Cir. 2014) (per curiam); *Graves v. Arpaio* (9th Cir. 2009) (rejecting argument that the district court abused its discretion in ordering prospective relief following a termination hearing rather than holding a later separate hearing on remedy). Plaintiffs respectfully submit that there is no justification for delay, and that the Court in the exercise of its broad discretion should deny Defendants' motion for continuance.

Delay would severely prejudice Plaintiffs, and that prejudice goes far beyond the automatic stay of prospective relief. The motion for an evidentiary hearing on violence has already been delayed many months since Plaintiffs filed their August 6, 2015 Motion, and in the interim, every delay has generated fresh claims by Defendants of reforms and promises of reforms in policies, procedures and conditions at Walnut Grove, creating an ever-moving target and necessitating new rounds of discovery to account for current conditions. Counsel, monitors, and expert witnesses from around the country have locked the hearing dates into their schedules and made travel plans many weeks ago. The waste, expense, and duplication of preparation time involved in once more postponing the hearing on violence would be staggering, and would be borne almost entirely by Plaintiffs, since Defendants alone have free access to the underlying data required for trial.

In contrast, Defendants have not identified any prejudice to them that would justify postponement of the hearing. In their reply in Support of Motion for Hearing and to Consolidate and Continue (ECF No. 136), Defendants make the baffling assertion that "[i]f the hearings, and/or at least the issues, are not consolidated Plaintiffs will be asking the Court on April 1, 2015 to enforce already 'terminable' relief, while at a later hearing attempting to show why the same relief should not be terminable in the first instance." *Id.* at 19-20. The same question applies at

each hearing date, namely, whether Defendants have been deliberately indifferent to Plaintiffs' constitutional right not to be subjected to a substantial risk of serious harm, and whether there is a current and ongoing violation of that right.

## CONCLUSION

Plaintiffs respectfully submit that the Court should proceed with the hearing on violence as calendared on April 1-3, 2015; set another hearing on medical issues, after consulting with the parties as to the period needed for discovery; make written findings based on the record as to whether there are current and ongoing violations of Plaintiffs' Eighth Amendment right not to be subjected to substantial risk of serious harm; and if so, enter prospective relief that extends no further than necessary to correct the violation, and is the least intrusive and narrowly-tailored that the Court finds necessary to remedy the violations.

Dated this 25th day of March, 2015.

<div style="margin-left:50%">

Respectfully submitted,

/s/Margaret Winter
Margaret Winter
National Prison Project of ACLU
915 15th Street, NW, 7th Floor
Washington, DC 20005
Phone: (202) 393-4930
Fax: (202) 393-4931
mwinter@npp-aclu.org
(admitted *pro hac vice*)

/s/Jody E. Owens, II
Jody E. Owens, II, MSB No. 102333
Jennie Eichelberger, MSB No. 102522
Southern Poverty Law Center
111 East Capitol Street, Suite 280
Jackson, Mississippi 39201
Phone: (601) 948-8882
Fax: (601) 948-8885
jody.owens@splcenter.org

</div>

jennie.eichelberger@splcenter.org

Robert B. McDuff
McDuff & Byrd
767 North Congress Street
Jackson, Mississippi 39202
Phone: (601) 969-0802
Fax: (601) 969-0804
rbm@mcdufflaw.com
jake@mcdufflaw.com

CERTIFICATE OF SERVICE

I, Jody E. Owens, hereby certify that a true and correct copy of the foregoing document was filed electronically. Notice of this filing will be sent by electronic mail to all parties by the Court's electronic filing system. Parties may access this filing through the Court's CM/ECF System.

SO CERTIFIED, this 25th day of March, 2015.

/s/Jody E. Owens, II
Jody E. Owens, II, MSB No. 102333