IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

**CHARLESTON DEPRIEST, ET AL.**                          PLAINTIFFS,

**v.**                          **CASE No. 3:10-663-CWR-FKB**

**WALNUT GROVE CORRECTIONAL AUTHORITY, ET AL.**                          DEFENDANTS.

**PLAINTIFFS' REPLY MEMORANDUM IN FURTHER SUPPORT OF
SUPPLEMENTAL MOTION FOR ATTORNEY'S FEES AND EXPENSES**

Defendants could have submitted a variety of evidence to rebut the reasonableness of Plaintiffs' hours and fees. They submitted nothing. The Supreme Court has held that the failure to do so results in defendants' objections being waived. *Blum v. Stenson*, 465 U.S. 886, 892 n.5 (1984) ("We decline to consider petitioner's further argument that the hours charged by respondents' counsel were unreasonable," for failure "to submit . . . any evidence challenging the accuracy and reasonableness of the hours charged . . . .").[1]

**I. Plaintiffs are Prevailing Parties and are Entitled to Fees Under the PLRA.**

A prevailing party is one who has "succeed[ed] on *any* significant issue in litigation which achieve[d] some of the benefit the parties sought in bringing suit." *Tex. State Teachers Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 791–92 (1989) (emphasis added) (*quoting Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)). The quantum of relief obtained is irrelevant. Thus, in *Familias Unidas v. Briscoe,* the court found a constitutional violation, awarded one dollar in nominal damages, and held the plaintiffs to be prevailing parties. 619 F.2d 391, 402, 405-06 (5th Cir. 1980). In the case at bar,

---

[1] *See* Martin A. Schwartz & John E. Kirklin*, 2 Section 1983 Litigation: Claims, Defenses, and Fees (2d. ed.) § 20.17*, at 206-07 (listing a variety of evidence that may be offered in rebuttal to reasonableness).

1

Plaintiffs easily satisfy the Section 1988 prevailing party standard in two separate ways.

### A. Plaintiffs Became, and Remain, Prevailing Parties From the 2012 Consent Decree

Contrary to Defendants' declaration that what happened in 2012 is "irrelevant," it is indisputable that Plaintiffs became prevailing parties following the Consent Decree's 2012 entry. Dkt. No. 198 at 6, ("DM"); *see Farrar v. Hobby,* 506 U.S. 103, 111 (1992). The prevailing party status obtained in 2012 was not confined to a particular moment in time. Multiple courts have recognized that prevailing party status does not disappear just because there is a new phase in ongoing civil rights litigation. *See Plyler v. Evatt*, 902 F.2d 273, 280 (4th Cir. 1990) (explaining that where later proceedings "involve the same common core of facts or related legal theories" as the initial litigation, plaintiffs keep their prevailing party status). In the instant phase of this case, Plaintiffs sought and won findings of constitutional violations: failure to protect prisoners from harm and excessive force. *See* Exh. 1, Tr. April 1, 2015, at 10:20-11:5. The relief in the resulting Order relates directly to the issues giving rise to this action. Indeed, as the Court recognized, "[t]he profound history of violence at Walnut Grove has been a central point of interest throughout this case's existence." Dkt. No. 170 ("Order") at 16. Other courts have held similarly to *Plyler. See generally Binta B. v. Gordon*, 710 F.3d 608, 625 (6th Cir. 2013); *Johnson v. City of Tulsa, Okla.*, 489 F.3d 1089, 1108 (10th Cir. 2007); *Cody v. Hillard*, 304 F.3d 767, 773 (8th Cir. 2002).

### B. Plaintiffs Obtained a "Material Alteration of the Legal Relationship of the Parties"

Plaintiffs once again became prevailing parties when they obtained a new, enforceable Order on June 11, 2015, as the Court's Order was a "material alteration of the legal relationship of the parties." *Tex. State Teachers Ass'n*, 489 U.S. at 792-93. The Order constitutes such a material alteration

2

in that it allows the relief to continue indefinitely in the absence of a successful motion to terminate.[2] *See* 18 U.S.C. § 3626(b)(1)(B)(3). Defendants argue that Plaintiffs cannot be prevailing parties because the Court's Order simply maintained the status quo and gained nothing for their clients. However, the extension of a judgment and, thus, the relief contained therein constitutes "prospective relief" for PLRA purposes. *Hallett v. Morgan*, 296 F.3d 732, 743 (9th Cir. 2002). This is precisely the kind of "material alteration" contemplated by *Farrar* and its progeny.[3]

### C.  Plaintiffs are Entitled to Fees under the PLRA.

It is useful to break down the proceedings into two phases. In the first phase, prior to entry of the Court's Order, fees are governed by 42 U.S.C. §§ 1997e(d)(1)(A) and (B)(i). In the second phase, following the Order, 42 U.S. C. § 1997e(d)(1)(B)(ii) governs.

#### 1.  Phase 1 - Fees Under 42 U.S.C. §§ 1997e(d)(1)(A) and (B)(i)

Defendants' contention that Plaintiffs failed to prove an "actual violation of the plaintiff's rights protected by a statute" is simply untrue. DM at 12. The Court found that "there is no question that, based on the record, there are current and ongoing violations of the inmates' federal rights." Order

---

[2] Defendants accuse Plaintiffs of "misrepresent[ing] an order entered by the very Court from which they seek a fee award." DM at 9. As best as Plaintiffs can discern, the "misrepresentation" is an alleged statement that the Order included "an 'extension' of the consent decree." DM at 8–9. First, Plaintiffs made no such statement. Rather, Plaintiffs stated that their "efforts extended the life of the *relief* contained in the Consent Decree." Dkt. No. 196 at 10 ("Pl. Mem.") (emphasis added). This is a true statement that recognizes that (1) the Consent Decree's relief was set to expire on March 26, 2017; and (2) the Court's Order enabled the non-terminated relief to continue beyond that date, absent a successful termination motion. Second, the Court, in its own Judgment, referred to "extending the consent decree." Dkt. No. 175 at 1. Defendants' accusation is unfounded.

[3] Indeed, in *Graves v. Arpaio,* the court terminated sizeable portions of relief, modified and reduced other relief, and entered no relief that extended beyond what the detainees already had in the existing judgment. Nevertheless, the court had little hesitation in finding the plaintiffs to be prevailing parties. 633 F. Supp. 2d 834, 847, 856 (D. Ariz. 2009); *Graves v. Arpaio*, No. 77-479, 2008 WL 4699770 (D. Ariz. Oct. 22, 2008). Further, as Defendants admit in their appellate briefing, the Court partially granted Plaintiffs' motion to enforce. *See* Def. App. Mem. at 14. This provides another ground for prevailing party status.

at 31. Further, the time and fees billed through issuance of the June 11, 2015 Order were "directly and reasonably incurred in proving" those constitutional violations. *See* Exh. 2, Owens Supp. Decl. ¶¶ 3, 15, 25, 30, 34 ("OSD"); Exh. 3, Winter Decl. ¶ 7 ("WD"); Exh. 4, McDuff Supp. Decl. ¶¶ 5-6 ("MSD"). *See generally Riley v. Kurtz,* 361 F.3d 906, 916 (6th Cir. 2004) ("directly and reasonably incurred" clause is merely a formulation of *Hensley's* related claim analysis).[4] These hours include investigatory prisoner interviews, working with experts, taking depositions, drafting pleadings, presenting evidence at the six-day evidentiary hearing, and drafting the post-trial brief. OSD ¶¶ 10-13, 17, 19, 20-21, 27-30, 34; Exh. 5, Eber Decl. ¶ 7 ( "ED").

The argument against awarding fees for defense of the Consent Decree is inapt. Successful defense against termination requires proof of a violation of a federal right, which is likewise a requirement for fees under 42 U.S.C. § 1997e(d)(1)(A). *See* 18 U.S.C. § 3626(b)(3). In other words, defending against termination necessarily requires Plaintiffs to satisfy the applicable PLRA fee provision.[5]

With regard to the PLRA's proportionality requirement for "phase 1" time, multiple courts have held that it merely codifies existing fees jurisprudence under 42 U.S.C. § 1988 and *Hensley* and its progeny. *See, e.g., Roberson v. Brassell,* 29 F. Supp. 2d 346, 349-55 (S.D. Tex. 1998) (recognizing the PLRA's fee limitations and awarding fees using a standard lodestar and *Johnson* factors analysis).

---

[4] In *Hensley,* the Court recognized that, in civil rights cases such as this one, plaintiffs' claims will involve "a common core of facts or will be based on related legal theories" and dividing counsel's hours claim-by-claim is difficult. Rather than considering such a case as "a series of discrete claims," courts should "focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation." 461 U.S. at 435.

[5] Defendants argue that Plaintiffs performed "no extra work – of any materiality…in defense of termination. The Inmates already had done that work in preparation of the modification motion that they lost." DM at 16. Defendants ignore the fact that the hours billed prior to the filing of Defendants' termination motion on March 13, 2015 enabled Plaintiffs to prove "current and ongoing violation[s]" of constitutional rights at an evidentiary hearing commencing only 18 days after the termination motion was filed.

Plaintiffs' lodestar and *Johnson* factors analysis is in their opening brief. *See* Pl. Mem. at 17-27. *See also* OSD ¶ 3; MSD ¶ 10; WD ¶ 7 (attesting to proportionality of each firm's fees to the relief obtained).

2. **Phase 2 - Fees Under 42 U.S.C. § 1997e(d)(1)(B)(ii):**

In phase 2, having proved constitutional violations, Plaintiffs' fees need only be "directly and reasonably incurred in enforcing the relief ordered for the violation[s]" found by the Court.[6] Defendants argue that "[d]efending an appeal is not 'enforcement'" (and thus is not compensable). However, multiple courts have held that defending an appeal under the PLRA is compensable, regardless of how characterized. *See Cody,* 304 F.3d at 775; *Webb v. Ada Cty.*, 285 F.3d 829, 841 (9th Cir. 2002); *Cf. Riley*, 361 F.3d at 916.

**II. Plaintiffs' Hourly Rates, Fees, and Expenses are Reasonable and PLRA-Permissible.**

A. **Hourly Rates:**

In their opening brief, Plaintiffs described how 42 U.S.C. § 1997e(d)(3) yields a current maximum attorney rate of $219 per hour, and offered the reasoning of four published opinions spanning four Circuits: two from Courts of Appeals and two from district courts. Pl. Mem. at 15-17. Defendants offer only two unpublished district court cases in rebuttal. Def. Mem. at 20–21.

Defendants provide no evidence such as declarations to rebut the reasonableness of Plaintiffs' non-attorney hourly rates. *See Islamic Ctr. of Miss., Inc. v. City of Starkville, Miss.,* 876 F.2d 465, 469 (5th Cir. 1989), *overruled on other grounds by Shipes v. Trinity Indus.*, 987 F.2d 311 (5th Cir. 1993); *Washington v. Philadelphia Cty. Ct. of Common Pleas,* 89 F.3d 1031, 1036 (3d Cir. 1996) (court may not reduce hourly rates when plaintiffs provide evidence supporting reasonableness but opposing party fails to

---

[6] The "proportionately related to the court ordered relief" requirement of subsection (1)(B)(i) does not apply to the enforcement of relief under subsection (1)(B)(ii) as the two subsections are disjunctive. *See Quindlen v. Prudential Ins. Corp. of America,* 482 F.2d 876, 878 (5th Cir. 1973).

contradict). In contrast, Plaintiffs have explained under oath the reasonability of their rates. *See* Pl. Mem. at 15, 21–22. *See Missouri v. Jenkins*, 491 U.S. 274, 288–89 (1989) (approving of billing law clerks and paralegals at market rates when their time is billed separately from attorney time).[7] Defendants counter with rates approved in cases fourteen to nineteen years old. *See Assoc. Builders & Contractors of La., Inc. v. Orleans Parish Sch. Bd.,* 919 F.2d 374, 379-80 (5th Cir. 1990) (declining to reduce rates based on cases that were "several years old."). Nor does the PLRA require a decreasing the rates charged by non-attorneys. *See Perez v. Cate*, 632 F.3d 553, 556, 558 (9th Cir. 2011).[8]

### B. Defendants' General Objections to Reasonableness Lack Merit.

A party's lodestar carries a "strong presumption" of reasonableness. *Purdue v. Kenny A,* 559 U.S. 542, 553-54 (2010).

*Plaintiffs exercised billing judgment:* Defendants offer nothing to support their conjecture that Plaintiffs did not exercise billing judgment. DM at 16. In contrast, Plaintiffs have offered two declarations under penalty of perjury that they applied billing judgment. *See* Pl. Mem. at 14.[9]

*Plaintiffs May Receive Their Full PLRA-Capped Hourly Rates for Travel Time*: The Fifth Circuit has recognized the lack of consensus among federal courts regarding the billing of travel time, *In re Babcock & Wilcox Co.*, 526 F.3d 824, 827-29 (5th Cir. 2008), and no Fifth Circuit authority *requires* reducing hourly rates for travel. While some Mississippi courts have awarded only 50% of fees for travel time, others award full fees for travel time. *Compare Smith v. Walthall Cty., Miss.*, 157 F.R.D.

---

[7] At SPLC and NPP, the time of non-attorneys is not built into attorneys' fees; these staff bill separately from attorneys when performing compensable tasks. OSD ¶ 13 n.5; ED ¶ 9.

[8] Nor, as Defendants argue, are whether and what non-attorneys are paid relevant to the compensability of their hours. DM at 21. The sole case Defendants cite has been characterized as the only case of its kind. *Skinner v. Uphoff*, 324 F. Supp. 2d 1278, 1286 (D. Wyo. 2004). *See also Tillman v. Wheaton-Haven Recreation Ass'n*, 517 F.2d 1141, 1148 (4th Cir. 1975). *See also Blum*, 465 U.S. at 892–94; OSD ¶ 13 n.5; ED ¶ 9.

[9] Both NPP and SPLC reviewed their billing entries again and exercised additional billing judgment, resulting in a decrease in the lodestar and expenses sought. ED ¶ 10; WD ¶ 18; OSD ¶¶ 12 n.4, 33, 35.

388, 393 (S.D. Miss. 1994) *with Penthouse Owners Ass'n, Inc. v. Certain Underwriters at Lloyd's, London*, No. 1:07–CV–568–HSO–RHW, Dkt. No. 441 (S.D. Miss. Dec. 21, 2011) (attached as Exh. 6); *see also* MSD ¶ 12. Plaintiffs' travel was necessary and precluded them from other work.[10] Excising 50% of fees for travel would be unjust, given the circumstances of this litigation.

*Compensability of non-appearing attorney time*: Defendants imply that compensation is not available for the work of attorneys who did not enter an appearance in this case, DM at 1 n.1, but cite no authority for this proposition. Indeed, authority is against them. *See, e.g., Charlebois v. Angels Baseball LP,* 993 F. Supp. 2d 1109, 1124 (C.D. Cal. 2012).

*Plaintiffs have properly documented their hours*: Defendants make sweeping accusations that Plaintiffs' fee documentation is vague, redundant, or has "little to no explanation of what work supposedly was performed;" however, with a single exception, they fail to identify which of the hundreds of Plaintiffs' time entries they dispute.[11] *See* DM at 17-18, 24. Defendants' challenges are otherwise conclusory, and should be disregarded. *See Mauricio v. Phillip Galyen, P.C.,* 174 F. Supp. 3d 944, 948–49 (N.D. Tex. 2016) (overruling objections to fees for failure to challenge specific time entries). Plaintiffs' time entries are more than adequate. *See also Hensley* (counsel not required "to record in great detail how each minute of his time was expended" but should "identify the general subject matter" of time spent) 461 U.S. at 437 n.12. *See also La. Power & Light Co. v. Kellstrom*, 50 F.3d 319,

---

[10] OSD ¶ 14; WD ¶ 20. SPLC's travel from Jackson to Walnut Grove was wholly necessary as prisoners do not have the freedom to meet with their counsel at the office or to speak with them at will by telephone, as they would in the private sector. OSD ¶¶ 14. Attorney Winter's time was likewise essential. WD ¶¶ 20-21. To cut Plaintiffs' rates in half for this travel time would penalize them and disincentivize other attorneys from taking on prisoners' rights cases. *See generally Espino v. Besteiro*, 708 F.2d 1002, 1010 (5th Cir. 1983).

[11] The sole time description specifically singled out as vague is one that reads "Work on WG fees brief." DM at 24. However, there can be no doubt that this description provides ample information to permit meaningful review and is sufficiently specific to allow the Court to determine whether the time spent was reasonable. *See* ED ¶ 21.

327, 332 (5th Cir. 1995) (explaining that time entries should permit "meaningful review," and one-word descriptions are borderline inadequate in meeting this standard). Likewise, "redundancy" is not an appropriate objection: A brief that takes several days to write will, naturally, result in multiple identical or near-identical time entries.

*Plaintiffs did not bill for "monitoring:"* Defendants cite repeatedly to their sole exhibit, a letter dated February 2, 2012 which states, in relevant part, that Defendants will pay up to $20,000 per year for "monitoring" the Consent Decree. However, the activities for which Plaintiffs now seek fees are *not* monitoring; they are all in furtherance of litigation or enforcement, whether through investigation of claims through client interviews, depositions, pleadings, or oral argument. *See generally Little Rock Sch. Dist v. State of Ark.,* 127 F.3d 693, 696 (8th Cir. 1997) (treating as distinct "monitoring" and "enforcement"); *Turner v. Orr,* 785 F.2d 1498, 1504 (11th Cir. 1986) (same).[12] *See also* OSD ¶¶ 8-10.

*The number of persons billing for a particular task*: The number of individuals who billed is irrelevant to a determination of reasonableness, and Defendants cite no authority otherwise. *See Hensley,* 461 U.S. at 433 (relevant numbers are hours reasonably spent and the reasonable hourly rate).

### C. The Hours Claimed by Plaintiffs Are Reasonable.

Defendants offer no declarations or evidence to rebut the reasonableness of hours claimed, *see supra* n.1, and their objections should be disregarded. *See Blum*, 465 U.S. at 892 n.5. *See also Ne. Ohio Coal. for the Homeless v. Husted,* 831 F.3d 686, 708 (6th Cir. 2016) (rejecting claim of unreasonableness where "[o]ther than aggregating numbers," defendants "utterly failed to establish that the requested hours were unnecessary"). Nor do they explain how they arrived at the totals that Plaintiffs

---

[12] However, for purposes of the present motion, Plaintiffs have expressly excluded a total of 306.68 hours ($37,514.65 in fees) and $650.88 in expenses that might be considered monitoring. See OSD ¶ 8 n.2, 10; ED ¶ 11. Nor, during the period at issue in this motion, have Plaintiffs collected fees from Defendants pursuant to the letter agreement. OSD ¶ 8. Thus, Defendants' fears of a "double recovery" are groundless.

8

purportedly billed for a particular activity. *See Mauricio,* 174 F. Supp. 3d at 948-49. *See also Wegner v. Standard Ins. Co.,* 129 F.3d 814, 823 (5th Cir. 1997). Thus, it is impossible for Plaintiffs to reconstruct and verify Defendants' calculations.

Nevertheless, even assuming Defendants' calculations are accurate, Plaintiffs affirm that these would be a reasonable number of hours and fees for each "phase 1" category of time below and that they satisfy 42 U.S.C. § 1997e(d)(1)(A)[13] and (1)(B)(i); and that these would be a reasonable number of hours and fees for each "phase 2" category of time below and that they satisfy 42 U.S.C. § 1997e(d)(1)(B)(ii).[14]

      1.      **"Phase 1" Time.**

*Prisoner interviews:* Interviews conducted prior to the evidentiary hearing were necessary to this litigation and are not covered by the letter agreement. *See* OSD ¶¶ 9-13, 15. Interviews conducted after the enforcement motion was filed largely overlap with those prior to the hearing. Interviews after the hearing were necessary until Defendants withdrew their intent to terminate the Consent Decree's health care relief. OSD ¶ 12.

*Depositions*: No more than one attorney and one paralegal billed time for any single deposition. OSD ¶ 17. *See, e.g., Marfia v. T.C. Ziraat Bankasi, N.Y. Branch,* 903 F. Supp. 463, 477–78 (S.D.N.Y. 1995), *vacated on other grounds*, 100 F.3d 243 (2d Cir. 1996). The depositions taken were of great value to the litigation. *See* OSD ¶¶ 16–25.

*Participation in the evidentiary hearing*: Having more than one attorney at a hearing or other litigation

---

[13] *See* OSD ¶ 15 (interviews), ¶ 25 (depositions) ¶ 34 (post-hearing brief), ¶ 32 ("clerical tasks"); WD ¶ 8 (evidentiary hearing), ¶ 11 (post-hearing brief); MSD ¶ 6 (post-hearing brief). *See also supra* and OSD ¶ 3; MSD ¶ 10; WD ¶ 6 (fees proportional to relief obtained).

[14] *See* WD ¶¶ 13-14 (appellee's brief), ¶¶ 18, 20 (oral argument and travel thereto); OSD ¶ 40 (appellate work), ¶ 39 (mootness); ED ¶ 17 (mootness); MSD ¶ 7 (mootness).

event is justified. *See, e.g., U. S. ex rel. Guth v. Roedel Parsons Koch Blache Balhoff & McCollister,* 626 Fed. App'x 528, 533 (5th Cir. 2015). *See also Lopez v. San Francisco Unified Sch. Sch. Dist.,* 385 F. Supp. 2d 981, 994 (N.D. Cal. 2005) (approving fees for multiple attorneys at a case management conference, mediation, deposition, and motion hearing). Counsel and staff's time was fully supportable and should be compensated accordingly. *See* WD ¶ 9; OSD ¶ 26-30; MSD ¶ 5.

*Post-hearing brief*: A generalized objection to the hours spent on a brief is not evidence of excessiveness. *See Husted,* 831 F.3d at 708. The filing of such a lengthy brief on such a short timeline was a massive undertaking spearheaded by Margaret Winter, s*ee* WD ¶ 11, with significant assistance by co-counsel. *Id.*; MSD ¶ 6; OSD ¶ 34.

*"Clerical tasks"*: Much of the time that Defendants likely classified as "clerical" was unquestionably compensable work. OSD ¶ 31–32. *See Gibson v. City of Chicago,* 873 F. Supp. 2d 975, 988–89 (N.D. Ill. 2012) (compensability of IT support time).[15]

## 2. "Phase 2" Time.

*Appellees' Brief:* Ms. Winter was the lead author of appellees' brief, assisted by junior attorneys. WD ¶ 14. The brief involved researching myriad complex legal issues related to the PLRA and deliberate indifference. *See* OSD ¶¶ 36–38. Defendants' generic objection should fail. *See Husted,* 831 F.3d at 708.[16]

*"Oral argument portion of the proceedings" and travel thereto*: Preparing for oral argument required, *inter alia*, mastering a voluminous record and preparing answers to all questions anticipated from the

---

[15] Without conceding the validity of Defendants' vague objections, SPLC removed from its lodestar 35.70 hours of time that *could* be considered non-compensable. OSD ¶ 33.

[16] Defendants object to time that Attorney Owens spent on the Fifth Circuit briefing as "exaggerated" and because his first "editing" entry was billed on September 28, 2015. DM at 19. Plaintiffs' counsel is entitled to clarify time entries through a supplemental declaration. *See Kranson v. Fed. Exp. Corp.*, No. 5826, 11–cv–2013 WL 6503308, at *4 (N.D. Cal. Dec. 11, 2013.). Accordingly, *see* OSD ¶¶ 36-38.

bench. WD ¶ 18. Staffing complex litigation with multiple attorneys to assist with oral arguments is neither unreasonable nor excessive. Regarding travel to the Court of Appeals, *see* WD ¶ 20; OSD ¶ 39.

*Billing entry regarding Attorney Winter's time at the Fifth Circuit Court of Appeals*: *See* WD ¶ 18.

*"Mootness portion of the proceedings"*: Plaintiffs successfully defeated Defendants' attempt at vacatur of the Court's June 11, 2015 Order. This required substantial research in addition to the briefing ordered by the Court of Appeals. See ED ¶ 12-14, 17; OSD ¶ 39 MSD ¶ 7.

*Fees on fees:* Fee litigation ("fees on fees") requires a considerable expenditure of time and effort. *See* ED ¶ 20; OSD ¶ 41; MSD ¶ 8. Based on counsel's experience and even accepting Defendants' calculations as accurate, this would be a reasonable number of hours and fees to complete this vital part of this litigation. ED ¶ 20; OSD ¶ 41.

### B.   Plaintiffs Are Entitled to the Reasonable Costs Requested:

In this district, the usual practice is to award prevailing parties "reasonable and necessary expenses incurred in asserting their rights." *See, e.g., Connor v. Winter,* 519 F.Supp. 1337, 1345 (S.D. Miss. 1981). Such was the case here. *See* WD ¶ 22. OSD ¶ 3.

*Expenses for prisoner interviews*: Because $6,418.85, DM at 25, seemed inordinately large, Plaintiffs tallied the expense entries associated with prisoner interviews, and found they billed $1,175.48 between the start of this stage of litigation and the evidentiary hearing, and $424.89 between the evidentiary hearing and the partial withdrawal of the motion to terminate. OSD ¶ 14.

*Travel expenses for multiple individuals attending an event*: This objection is too broad to respond to; Defendants fail to identify the individuals and events to which they refer. Plaintiffs have addressed travel time and more than one person attending a litigation event *supra.*

### C.   No Reduction of Lodestar is Warranted and No Special Circumstances Exist:

11

Defendants devote little ink to the *Johnson* factors. Plaintiffs' counsel has demonstrated their competence, skill, and experience. *See* Pl. Mem. at 23–24. They have fully documented and justified their hours and obtained excellent results.[17] Nor have Defendants have demonstrated the existence of special circumstances justifying the denial of fees. *See Sanchez v. City of Austin*, 774 F.3d 873, 880 (5th Cir. 2014) (the special circumstances exception is a "narrow carve-out," and fees should be awarded "'as a matter of course'" absent "'an extremely strong showing.'") (citations omitted). No "special circumstances" exist here. In seeking to enforce the consent decree and give effect to their constitutional rights, Plaintiffs participated in no less than eleven status conferences, engaged in settlement negotiations, completed a six-day evidentiary hearing, made multiple visits to Walnut Grove to interview clients, defended a judgment on appeal, and billed at rates capped by the PLRA.

## III.     Conclusion

For the foregoing reasons and those stated in Plaintiffs' Memorandum in Support of Motion for Attorney's Fees, Plaintiffs respectfully ask this Court to award them their revised lodestar of $541,513.70 and $45,841.30 in expenses.

Respectfully submitted,

/s/Jody E. Owens, II
Jody E. Owens, II, MSB No. 102333
Sarah Bidinger, MSB No. 105015
Southern Poverty Law Center
111 East Capitol Street, Suite 280
Jackson, Mississippi 39201
Phone: (601) 948-8882

---

[17] Defendants state that Plaintiffs ended up with less than what they started with because some provisions in the Consent Decree were terminated. *See* DM at 11, 13, and 23. But nearly all of the terminated provisions were ones that Plaintiffs did not contend were necessary to remedy constitutional violations. *See* Dkt. Nos. 163 at 93, 94. The termination of uncontested relief should not affect the reasonableness of Plaintiffs' fee request; these issues simply were not litigated. *See Graves*, 633 F. Supp. 2d at 847, 856; *Graves*, 2008 WL 4699770 (awarding full lodestar notwithstanding termination of significant portions of judgment.).

>Fax: (601) 948-8885
>jody.owens@splcenter.org
>sarah.bidinger@splcenter.org
>
>Gabriel B. Eber
>Margaret Winter
>National Prison Project of ACLU
>Phone: (202) 393-4930
>Fax: (202) 393-4931 |
>geber@aclu.org (*pro hac vice*)
>mwinter@aclu.org (*pro hac vice*)
>
>Robert B. McDuff
>Jacob W. Howard
>McDuff & Byrd
>767 N. Congress Street
>Jackson, Mississippi 39202
>Phone: (601) 969-0802
>Fax: (601) 969-0804
>rbm@mcdufflaw.com
>jake@mcdufflaw.com

## **CERTIFICATE OF SERVICE**

I, Jody E. Owens, II, one of the attorneys for Plaintiffs, hereby certify that on this date I electronically filed the foregoing with the Clerk of the Court using the ECF system which sent notification of such filing to all counsel of record.

SO CERTIFIED this 20th day of March, 2017.

/s/Jody E. Owens, II  
Jody E. Owens, II, MSB No. 102333
