IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

**CHARLTON DEPRIEST, ET AL.**                                              **PLAINTIFFS**

**V.**                                                      **CAUSE NO. 3:10-CV-00663-CWR-FKB**

**WALNUT GROVE CORRECTIONAL**                                              **DEFENDANTS**
**AUTHORITY, ET AL.**

## ORDER

Before the Court is Plaintiffs' motion for attorney's fees and costs. For the reasons stated below, the motion is GRANTED in part and DENIED in part.

**I.   Background**

In March 2012, the parties and this Court entered into a Consent Decree regarding conditions at the Walnut Grove Correctional Facility. Docket No. 75 at 5. The Decree's provisions, among other things, required Defendants to protect the Eighth Amendment rights of Walnut Grove inmates. *See* Docket No. 75-3 at 4 (requiring that inmates be "provided with reasonably safe living conditions and [be] protected from violence"). These provisions were originally set to expire in March 2017, but could be extended by this Court as it saw fit. *Id*. at 15.

In August 2014, following two riots at Walnut Grove, Plaintiffs filed a Motion for Enforcement and Modification of the Decree. Docket No. 106. That motion asked that this Court hold an evidentiary hearing to determine what, if any, new measures were necessary to enforce the Decree's Eighth Amendment protections. *Id*. at 1 (requesting whatever "additional remedial measures" were required to "provide reasonably safe living conditions and freedom from violence for the inmates at Walnut Grove"). In March 2015, Defendants responded by filing a Motion to Terminate Prospective Relief Granted by the Decree. Docket No. 129. That motion asked this Court to terminate the entirety of the Decree pursuant to the Prison Litigation Reform Act

("PLRA"), alleging that there were "no current and ongoing violations" of any inmate rights at Walnut Grove. *Id.* at 2.

In April 2015, this Court held the evidentiary hearing requested by Plaintiffs. Two months later, the Court issued an Order dispensing with both the Motion to Enforce and the Motion to Terminate. Docket No. 169. The Order found, on the basis of the evidence presented by Plaintiffs, that there were "current and ongoing violations of the Eighth Amendment" at Walnut Grove. *Id.* at 19. The Order tailored the Decree's prospective relief to those violations, eliminating some of the Decree's provisions while maintaining others. *Id.* at 30-31. The Order was effectuated by a Final Judgment. Docket No. 175. The Final Judgment denied Defendants' Motion to Terminate, and – pursuant to the Decree's terms – "extend[ed]" the remaining provisions of the Decree beyond their original expiration date. *Id.* at 1.

Defendants promptly appealed the Order. Docket No. 172. Before the Fifth Circuit could render an opinion, Walnut Grove was closed, and the appeal was mooted. Docket No. 192. In September 2016, the Fifth Circuit dismissed the case for lack of jurisdiction, but held that this Court retained jurisdiction to rule on Plaintiffs' motion for attorney's fees and costs, *Depriest v. Fisher*, 669 Fed.Appx. 209 (5th Cir. 2016), which was filed shortly after the entry of the Order. Docket No. 171.

In January 2017, Plaintiffs filed a supplemental motion for attorney's fees and costs. Docket No. 196. That motion requested an award for work performed on the Motion to Enforce, the Motion to Terminate, and all subsequent filings. *Id.* at 4-5. Plaintiffs calculate this award to be $587,355.00. Docket No. 206.

Defendants claim it would "shock the conscience" to grant Plaintiffs an attorney's fee award. Docket No. 198 at 1. Defendants argue that Plaintiffs' fee request should be "denied

outright" because the Order left Plaintiffs "in a worse, not better, position than they were [previously] in." *Id.* at 2. In the alternative, Defendants argue that Plaintiffs are "not entitled to anything close" to the award they request because that award fails to be "reasonable." Docket No. 198 at 26.

## II. Legal Standard

In civil rights actions, a "prevailing plaintiff should ordinarily recover attorney's fees under [42 U.S.C. § 1988(b)] unless special circumstances would render such an award unjust." *Kirchberg v. Feenstra*, 708 F.2d 991, 998 (5th Cir. 1983). "We have interpreted this to mean that absent special circumstances, a prevailing plaintiff should be awarded section 1988 fees *as a matter of course*." *Id.* (citation omitted and emphasis in original).

To attain prevailing party status, "a plaintiff must (1) obtain actual relief, such as an enforceable judgment or consent decree; (2) that materially alters the legal relationship between the parties; and (3) modifies the defendant's behavior in a way that directly benefits the plaintiff at the time of the judgment or settlement." *Dearmore v. City of Garland*, 519 F.3d 517, 521 (5th Cir. 2008) (quotation marks and citation omitted). If plaintiffs have already obtained relief granting them prevailing party status, that status will be extended to certain efforts aimed at enforcing the prior relief. *Miller v. Carson*, 628 F.2d 346, 348 (5th Cir. 1980). Such efforts are those that are "related to the enforcement" of the prior relief and have "contributed to the vindication of rights." *Id.* Furthermore, a "plaintiff is entitled to an attorney's fee for [a mooted] appeal" when they are "a prevailing party" in the underlying action. *Murphy v. Fort Worth Indep. Sch. Dist.*, 334 F.3d 470, 470-71 (5th Cir. 2003) (citation and quotation marks omitted); *see also Depriest*, 669 Fed.Appx. at 210 ("a determination of mootness neither precludes nor is precluded by an award of attorneys' fees") (citation omitted).

3

Prevailing parties are entitled to a reasonable attorney's fee, which is typically calculated using the "lodestar" method. *See McClain v. Lufkin Indus., Inc.*, 649 F.3d 374, 381-82 (5th Cir. 2011). This method requires courts to multiply the hours a party "reasonably expended" by the "reasonable hourly rate for their services." *Id*. (citations omitted). The lodestar method "yields a fee that is presumptively sufficient." *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 552 (2010) (citation omitted).

Courts may adjust the lodestar using the twelve *Johnson* factors, the "most critical" of which is the "degree of success obtained." *Abner v. Kan. City S. Ry. Co.*, 541 F.3d 372, 377 (5th Cir. 2008) (citing *Johnson v. Ga. Highway Express*, 488 F.2d 714, 717-19 (5th Cir. 1974)). An attorney's fee award ruling should "explain how each of the *Johnson* factors affects its award," but "need not be meticulously detailed to survive appellate review." *In re High Sulfur Content Gasoline Prod. Liab. Litig.*, 517 F.3d 220, 228 (5th Cir. 2008).

The PLRA imposes three additional limitations on fee awards in prison reform litigation. First, all fees must have been "directly and reasonably incurred in proving an actual violation of the plaintiff's rights." 42 U.S.C. § 1997e(d)(1)(A). Second, the fees must be either "proportionally related to the court ordered relief" or "directly and reasonably incurred in enforcing the relief ordered." 42 U.S.C. § 1997e(d)(1)(B). Third, the fees cannot be predicated upon hourly rates which exceed "150 percent of the hourly rate established" by 18 U.S.C.A. § 3006A, known as the Criminal Justice Act ("CJA"). 42 U.S.C. § 1997e(d)(3).

Courts disagree on what the "established" hourly rate is under the CJA for the purposes of this third requirement. Some courts use the maximum CJA rates approved by the Judicial Conference, while others use the rates budgeted for by Congress. *See Batchelder v. Geary,* No. C-71-02017 RMW, 2007 WL 2427989, at *4–5 (N.D. Cal. Aug. 22, 2007) (collecting cases). In the

absence of binding precedent, this Court agrees with the majority of courts which have reached this issue, and finds it appropriate to use the CJA rate approved by the Judicial Conference. *See, e.g., Hadix v. Johnson*, 398 F.3d 863, 866–68 (6th Cir. 2005), *Webb v. Ada Cty.*, 285 F.3d 829, 839 (9th Cir. 2002), *Williams v. Taylor*, No. 4:08CV163-SA, 2012 WL 12965714, at *2 (N.D. Miss. Dec. 3, 2012); *but see Hernandez v. Kalinowski,* 146 F.3d 196, 201 (3d Cir. 1998).

## III. Discussion

The threshold question in this case is whether Plaintiffs have attained prevailing party status. If this is the case, the only remaining question regards the scope of the attorney's fee award to which Plaintiffs are entitled. Both questions are discussed below.

### A. Prevailing Party Status

There is no real dispute that the 2012 Decree granted Plaintiffs prevailing party status. The Decree meets all three prongs of the test outlined in *Dearmore*. 519 F.3d at 521. First, the Decree constitutes "actual relief," as it is a consent decree. *Id*. Second, as evidenced by the extent of its terms, the Decree "materially alter[ed]" the legal relationship between Plaintiffs and Defendants. *Id*. Finally, as demonstrated by those terms' implementation, the Decree "modifie[d] the defendant's behavior" in a way that "directly benefitted plaintiffs at the time of its entry." *Id*.

What the parties dispute is whether this prevailing party status extends to Plaintiffs' subsequent efforts to enforce the Decree – namely, the work Plaintiffs expended on both the Motion to Enforce and the Motion to Terminate. For prevailing party status to extend to this work, that work must have (1) been "related to the enforcement" of the Decree's relief, and (2) "contributed to the vindication of rights." *Miller*, 628 F.2d at 348.

Plaintiffs' efforts satisfy *Miller*'s first prong by relating to the enforcement of the Decree's relief. Their efforts to defeat the Motion to Terminate aimed to prevent the end of that relief. Their

5

efforts to support their Motion to Enforce aimed to extend and enhance that relief. And their efforts to defend their victories on appeal furthered both these aims. All of Plaintiffs' efforts here satisfy *Miller*'s first prong.

Plaintiffs' efforts satisfy *Miller*'s second prong by contributing to the vindication of the Walnut Grove inmates' Eighth Amendment rights. This prong is met when a plaintiff has "successfully induc[ed a defendant] to comply with both the constitution and the regime of law, embodying important rights and duties, created by" the prior relief. *Miller*, 628 F.2d at 348-50. Plaintiffs did so by obtaining the Final Judgment, which induced Defendants' compliance in two ways. First, by denying the Motion to Terminate, it prevented the entirety of the Decree's relief from disappearing, and stopped Defendants from ending their compliance with that relief. Docket No. 175 at 1. Second, the Final Judgment "extend[ed]" many of the Decree's terms beyond their original expiration date. *Id*. This extension forced Defendants into a period of compliance beyond that initially envisioned by the Decree. Plaintiffs' efforts resulting in the Final Judgment therefore induced compliance with the Decree's relief, and satisfy *Miller*'s second prong.[1]

That this Court ended some of the Decree's provisions does not disturb this conclusion. *Miller* does not require plaintiffs to vindicate all rights granted by the prior relief, nor does it require them to obtain all the relief they have requested. *Miller* explicitly "reject[s] anything . . . which insists that a district court must always sever an attorney's work into 'issue parcels' and then assess that work for the purposes of a fee award in terms of each issue standing alone." 628

---

[1] The relief within the Order and Final Judgment not only meets the *Miller* test for extending "prevailing party" status, but also meets the *Dearmore* test for granting new "prevailing party" status. The extension of the Decree's provisions beyond their original expiration date constituted "actual relief" by continuing a consent decree, "materially alter[ed]" the relationship between the parties beyond the terms of the initial Decree, and "modifie[d] the defendant's behavior" in a way that benefitted plaintiffs *at the time of its entry*. *Dearmore*, 519 F.3d 517, 521 (emphasis added). That this case was later mooted by the closure of Walnut Grove does not change this fact. For the purposes of *Dearmore*, all that matters is that, at the time of the Final Judgment's entry, defendant's behavior was modified to the benefit of plaintiffs.

6

F.2d at 348. As long as the entirety of plaintiffs' efforts are "directed towards remedying the constitutional wrongs" at issue, and those efforts result in the vindication of rights, they qualify for a fee award. *Id* at 348-49.

Such is the case here. This Court may have denied the portions of Plaintiffs' Motion to Enforce which requested the enforcement or modification of all the Decree's provisions. But this Court also granted the rest of that motion, extending the enforcement of many of the Decree's key provisions. Plaintiffs' efforts will not be parceled into segments aimed at enforcing the Decree's entirety and segments aimed at enforcing the Decree's extended provisions. These efforts in their entirety were directed at remedying constitutional wrongs, and resulted in the vindication of rights embodied in the Order and Final Judgment.

In sum, Plaintiffs are a prevailing party for the purpose of this motion. The work for which they seek an attorney's fee award was related to the enforcement of the Decree's relief, and resulted in the vindication of rights. That work must be accounted for within an attorney's fee award.

### B. Scope of Award

This Court will use a three-step analysis to determine the scope of a reasonable attorney's fee award.[2] First, the lodestar fee award will be calculated. Second, the *Johnson* factors will be applied to the lodestar, which will be modified if necessary. Finally, the award will be limited in line with the PLRA. This analysis is conducted below.

#### 1. Lodestar Calculation

"[T]he loadstar method yields a fee that is presumptively sufficient." *Perdue*, 559 U.S. 542, 552 (2010) (citations omitted). The first step in calculating a lodestar is determining the hours a

---

[2] In line with *Farrar v. Hobby*, this reasonableness analysis subsumes a determination of whether "special circumstances would render [an award granted under §1988] unjust." 506 U.S. 103, 188 (1992) (quotation marks and citation omitted).

7

prevailing party "reasonably expended" during the actions in question. *McClain*, 649 F.3d at 381. Plaintiffs bear the burden of submitting evidence "supporting the hours worked," *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983), and establishing that such hours are reasonable, *Abner*, 541 F.3d at 377. That evidence must reflect "billing judgment," which "refers to the usual practice of law firms in writing off unproductive, excessive, or redundant hours." *Walker v. U.S. Dep't of Hous. & Urban Dev.*, 99 F.3d 761, 769 (5th Cir. 1996). This burden is met by producing "billing records . . . that will enable a reviewing court to identify distinct claims." *Hensley*, 461 U.S. at 437. But, "[a] district court cannot inquire into the reasonableness of every action taken and every hour expended by counsel." *Illinois Cent. R. Co. v. Harried*, No. 5:06-CV-160-DCB-JMR, 2011 WL 283925, at *10 (S.D. Miss. Jan. 25, 2011) (citation omitted).

Plaintiffs though have submitted billing records that are detailed enough to allow this Court to determine if each billed hour was reasonable. *See, e.g.,* Docket No. 206-2. Plaintiffs utilized the practice of separate billing, and billed for three classes of work: attorney work, community advocate work, and law clerk work. *See id.* The lodestar must account for this work. *See Missouri v. Jenkins by Agyei*, 491 U.S. 274, 285 (1989) (a lodestar calculation "must take into account the work not only of attorneys, but also of secretaries, messengers, librarians, janitors, and others whose labor contributes to the work product for which an attorney bills her client"). In total, Plaintiffs request attorney's fees for 2,290.9 hours of attorney work, 475.5 hours of community advocate work, and 39.2 hours of law clerk work.[3]

---

[3] These figures were obtained by adjusting Plaintiffs' initial hourly requests to reflect the deductions made in their supplemental motion and relevant exhibits. And, it includes the time expended in making this request for attorneys' fees. Such time is compensable. *See Volk v. Gonzalez*, 262 F.3d 528, 536 (5th Cir. 2001) (holding that fees-on-fees are "directly and reasonably incurred in proving an actual violation of the plaintiff's rights' and therefore recoverable.") (citation omitted).

8

This Court finds that Plaintiffs generally expended a reasonable number of hours on this matter, which required a significant amount of complex legal work over a three-year period. Plaintiffs have engaged in both trial court and appellate advocacy, extensive motions practice, exploration of novel legal issues, and coordination amongst a host of parties. This work – and its pressing nature, given the threat to inmate safety evidenced by the 2014 riots – indicates a high degree of skill on the part of counsel for Plaintiffs. Their work here, which aimed to defend both their longstanding clients and the Decree, was difficult and necessary. It is reasonable for Plaintiffs to bill for hours that accord with what a single attorney, working typical law firm hours, would bill over roughly a year and a half period. *See E.E.O.C. v. Clear Lake Dodge,* 60 F.3d 1146, 1154 (5th Cir. 1995) (noting that "2000 billable hours a year" is average for attorneys at law firms).

This Court finds, however, that a number of hours billed by Plaintiffs must be excluded for a lack of billing judgment. The most significant deficiency in terms of billing judgment stems from the 562.4 hours of attorney work Plaintiffs billed in preparing their appellate brief. *See* Docket No. 206-2 at Ex. A; Docket No. 206-5. This compares to the 177.1 hours of attorney work (and 30 hours of legal assistant work) Plaintiffs billed in preparing the brief filed after the evidentiary hearing. *Id.* To wit, Plaintiffs billed three times as many hours to draft an appellate brief that was half as long as their post-hearing brief, and much of that time was attributed to a single editor.[4] There is, then, a wide discrepancy between the hours Plaintiffs expended on their post-hearing brief – a number of hours this Court finds to be reasonable – and the hours expended on their appellate brief. Some of this discrepancy can be attributed to the nature of appellate work, which can require more thorough and detailed legal analysis than that involved in trial work. *See Boniuk*

---

[4] Given the formatting differences between appellate and trial court briefs, word count – and not page count – is the most appropriate way to compare brief length. Plaintiffs' post-hearing brief contained roughly 35,000 words. Docket No. 165. In contrast, Plaintiffs' appellate brief contained roughly 17,000 words. Brief for Plaintiffs-Appellees, *Depriest v. Fisher*, 669 Fed.Appx. 209 (2016) (No. 15-60488), 2015 WL 7596127.

9

*v. New York Med. Coll.,* 535 F. Supp. 1353, 1357 (S.D.N.Y.), *aff'd,* 714 F.2d 111 (2d Cir. 1982) (noting the "cost and difficulty of appeals within the federal system"). Some of this discrepancy can be attributed to the fact that Plaintiffs wrote memoranda on issues that, while relevant to the appeal, were not covered in their final appellate brief. *See* Docket No. 206-2 at 15-16. The remaining, sizeable discrepancy between hours billed on their post-hearing brief and their appellate brief has not been justified by Plaintiffs, and indicates a significant failure to exercise billing judgment. This Court will account for this failure by excluding 75 hours of attorney work each from the ACLU and the SPLC's shares of the attorney's fee award.

Internal inconsistencies within Plaintiffs' billing records also reflect a failure to exercise billing judgment. Some inconsistencies were minor, like those involving differing hour entries for the same conference call. *Compare* Docket No. 206-5 at 33 *with* Docket No. 206-2 at Ex. A-19 (Southern Poverty Law Center billing 1.1 hours of attorney work for a call for which the American Civil Liberties Union billed just 0.9 hours of attorney work). Others are more significant, like those suggesting an entire meeting billed for may not have occurred. *Compare* Docket No. 206-5 at 9 *with* Docket No. 206-2 at Ex. A-6 (ACLU billing 6.6 hours for attorney work regarding a "Skype call with SPLC" on February 24, 2015 that is not reflected in SPLC's billing records).

These inconsistencies may be insignificant errors that do not constitute a lack of billing judgment. Indeed, Plaintiffs have exercised substantial billing judgment elsewhere in this case. *See, e.g.,* Docket No. 206-3 at 7 (reducing claimed hours in response to Defendants' objections). The inconsistencies, however, reflect some inattentiveness which undermines the foundation of Plaintiffs' overall fee request. Their award, therefore, must be adjusted accordingly. But, these inconsistencies do not justify limiting Plaintiffs to no relief at all, as Defendants advocate. *See* Docket No. 198, at 10. *See A C Marine, Inc. v. Axxis Drilling Inc.,* No. 10-0087, 2011 WL 1595438,

10

at *4 (W.D. La. Apr. 25, 2011) ("The remedy for failure to submit bills containing complete detail is not preclusion, but, rather, reduction of the fees and costs claimed."). "The essential goal in shifting fees (to either party) is to do rough justice, not achieve auditing perfection." *Fox v. Vice*, 563 U.S. 826, 131 S. Ct. 2205, 2216 (2011)., This Court will thus exclude 50 hours of attorney work from each of the ACLU and the SPLC's shares of the attorney's fee award.

Defendants also allege that Plaintiffs did not exercise billing judgment by overstaffing depositions and hearings. Docket No. 198 at 17. Billing the hours of more than one attorney for a court proceeding or deposition, particularly where one or more of the attorneys are observers only, constitutes a lack of billing judgment. *See Johnson*, 488 F.2d at 717; *see also Abrams v. Baylor College*, 805 F.2d 528, 535 (5th Cir. 1986). But courts recognize that more than one attorney, or even a team of lawyers, may be required in a complex matter. *See, e.g.*, *Feld Motor Sports, Inc., v. Traxxas, LP*, No. 4:14-CV-543, 2016 WL 2758183, at * 8 (E.D. Tex. May 12, 2016); *Ali v. Stephens*, No. 9:09-CV-52, 2015 WL 2061981, at *4 (E.D. Tex. Apr. 29, 2015).

Here, Plaintiffs' staffing practices are justified. This was a complex case and Defendants do not dispute this point. Plaintiffs only billed for one attorney during the relevant depositions. Docket No. 206-2 at 10. While Plaintiffs did bill for two to three attorneys during courtroom proceedings, those attorneys all made appearances and helped present complex evidence and legal arguments. *Id*. at 12. Likewise, given the difficulty of this case, Plaintiffs' use of a legal assistant during depositions and courtroom proceedings was reasonable. *Id*. at 10-12.

Defendants' objections ring particularly hollow given their own staffing practices during this case. Defendants had many as three attorneys present during depositions, *id*. at 9-10, and staffed the evidentiary hearing with four attorneys. Docket No. 195-4. Their complaints regarding Plaintiffs' alleged overstaffing cannot be taken seriously.

Taking all relevant adjustments into consideration, this Court finds that a reasonable attorney's fee award must account for a total of 788.9 hours of attorney work for the SPLC, 475.5 hours of community advocate work for the SPLC, 1201.8 hours of attorney work for the ACLU, 39.2 hours of law clerk work for the ACLU, and 40.1 hours of attorney work for the firm of McDuff & Byrd.

After determining the hours "reasonably expended" on a matter, a court calculating a lodestar must determine the "reasonable hourly rate" for an attorney's services. *McClain*, 649 F.3d at 381 (citation omitted). Such rates "are to be calculated according to the prevailing market rates in the relevant community." *Blum v. Stenson*, 465 U.S. 886, 895 (1984); *see also Jenkins*, 491 U.S. at 286-87 (holding that, if the prevailing custom in a community is separate billing for non-attorney work, the value of that work is measured by the relevant market rates in that community). The "relevant market" here is "the community in which the district court sits," *Scham v. District Courts Trying Criminal Cases,* 148 F.3d 554, 558 (5th Cir.1998), *abrogated on other grounds by Bailey v. Mississippi*, 407 F.3d 684 (5th Cir.2005). Plaintiffs bear the burden of submitting evidence "supporting the . . . rates claimed," *Hensley*, 461 U.S. at 433, and establishing that such rates are reasonable, *Abner*, 541 F.3d at 377.

Plaintiffs request an hourly rate of $219 for attorney work. Prevailing market rates for this work in Jackson vary widely. *See Brown v. Miss. Dep't of Health*, No. 3:11-CV-146-CWR-FKB, 2013 WL 12128785, at *3 (S.D. Miss. Mar. 5, 2013). Plaintiffs have submitted extensive evidence regarding the reasonableness of their requested rate. *See, e.g.,* Docket No. 195-1 at Ex. B-1 (affidavit stating that hourly rates for similar attorney work in Jackson are between $300 and $450); *id.* at 7-10 (affidavits of Plaintiffs' attorneys attesting to their levels of experience and skill); Docket No. 195-2 at 2 (affidavit establishing current market rates for Plaintiffs' attorneys). This

evidence is supported by recent rulings in this district establishing rates for similar attorney work. *See, e.g. Olivia Y., et al., v. Barbour*, No. 3:04CV251LN, Docket No. 691 at 11 (S.D. Miss. May 6, 2016) (finding that hourly rates between $217.50 and $425 for attorney work in institutional reform litigation are reasonable); *Jones v. Singing River Health Sys.*, No. 1:14-CV-447-LG-RHW, 2016 WL 3248449, at *3 (S.D. Miss. June 10, 2016) (finding $400 hourly rate proper in this jurisdiction for an experienced attorney handling complex litigation); *Perez v. Bruister*, No. 3:13-CV-1001-DPJ-FKB, 2015 WL 5712883, at *6 (S.D. Miss. Sept. 29, 2015) (approving hourly rates of $375, $400 and $700 for attorneys involved in the case). Plaintiffs' requested hourly rate appears to be on the low end of what is reasonable, given the extensive work of seasoned attorneys like the ACLU's Margaret Winter, *see* Docket No. 195-2 at Ex. D. This Court finds a reasonable hourly rate for the attorney work here to be $219.

However, a different rate must be applied to hours billed for time that attorneys were travelling. Courts in this district "typically compensate travel time at 50% of the attorney's rate in the absence of documentation that any legal work was accomplished during travel time." *Baker v. Washington Mut. Fin. Grp.*, LLC, No. CIVA 104CV137WJG-JMR, 2007 WL 571103, at *12 (S.D. Miss. Feb. 20, 2007) (citing *Watkins v. Fordice*, 807 F.Supp. 406, 459 (S.D. Miss. 1992); *Smith v. Walthall Cnty.*, 157 F.R.D. 388, 393 (S.D. Miss. 1994)); *see also Martin v. Mabus*, 734 F.Supp. 1216, 1227 (S.D. Miss. 1990); *Beamon v. City of Ridgeland*, Miss., 666 F.Supp. 937, 941 (S.D. Miss. 1987). Here, Plaintiffs have failed to provide documentation that any legal work was accomplished during travel time billed for by their attorneys. This Court finds a reasonable hourly rate for this attorney travel time to be 50% of the attorney work rate, or $109.50.

Plaintiffs billed separately for non-attorney work in custom with the practice of this district. Pursuant to *Jenkins*, this work will be included within the lodestar, and will be valued using the

market rates for that work in Jackson. *See* 491 U.S. at 286-87. Plaintiffs request $75 an hour for the work of community advocates (who are paid employees of SPLC, Docket No. 195-2 at 5), and $160 for the work of law clerks. Unlike Plaintiffs' requested hourly rates for attorney work, these requested rates for non-attorney work are not supported by the record.

Plaintiffs have not presented any evidence regarding the market value of the work done by community advocates. Plaintiffs claim that community advocate work should be treated like paralegal work. *See* Docket No. 195-2 at 12. Their only support for this contention is that one community advocate "performed the job duties of an outreach paralegal." *Id.* Plaintiffs' own billing records indicate, however, that community advocates' work often did not require the skill of a paralegal to complete. *See, e.g., id.* at Ex. A (billing for community advocate hours spent "compil[ing] names for visit list from previous notes," conducting "client interviews at Walnut Grove," "pick[ing] up . . . documents from Attorney General's office," and "pulling exhibits"). Defendants point to cases where courts have set hourly rates for this kind of basic legal assistant work between $25 and $45 an hour. *See, e.g., Jackson v. Austin*, 267 F. Supp. 2d 1059, 1066 (D. Kan. 2003). This Court is persuaded by these cases, and finds a reasonable hourly rate for community advocate work to be $35.[5]

Plaintiffs' requested rate for law clerk work is similarly unjustified. Their only evidence supporting that rate is a citation to the Department of Justice's matrix for determining reasonable fee awards in civil rights actions. Docket No. 195-2 at Ex. C. This matrix establishes rates for work in the District of Columbia, not in Jackson. *Id.* Out-of-district counsel is entitled to the rates they normally charge only in "certain limited circumstances." *McClain*, 649 F.3d at 383. Plaintiffs have failed to show why any of these circumstances apply to the work of their law clerks. This work

---

[5] The fact that some of the community advocate hours billed for included travel time is reflected in this downward adjustment.

appears to be that normally conducted by paralegals, work which this Court has previously found to have a "reasonable local billing rate" of $100. *Brown*, No. 3:11-CV-146-CWR-FKB, 2013 WL 12128785, at *3. Therefore, this Court finds a reasonable hourly rate for law clerk work to be $100.

Once reasonable hourly rates have been set, a court calculating a lodestar must take reasonable expenses into account. *Jenkins*, 491 U.S. at 285. Here, Plaintiffs have submitted reports detailing $45,841.30 in expenses. *See, e.g.,* Docket No. 195-2 at Ex. B. Defendants' only substantial[6] objection here is that some expenses were related to inmate interviews at Walnut Grove. Docket No. 198 at 25. Pursuant to the Decree, Plaintiffs are already entitled to recover $20,000 in annual fees related to monitoring of the Decree's implementation. *See* Docket No. 197-1 at 1. Inmate interviews are often part of such monitoring efforts. Defendants are concerned that including these expenses in a fee award will cause, or at least pose the threat of, double recovery.

Defendants concerns are justified, but can be assuaged. Plaintiffs have already done so, in part, by excluding from their reports expenses for which they have already recovered. *See* Docket No. 206-2 at 3-6. To prevent any future threat of double recovery, this Court will award the portion of Plaintiffs' expenses related to interviews at Walnut Grove, on the condition that Plaintiffs be barred from including these expenses in any future requests for monitoring costs from Defendants.

This Court will include within the lodestar all expenses relating to filing, lodging, travel, photocopying, postage, and telephone costs, as it finds these expenses to be reasonable. This Court will not, however, award Plaintiffs the $657 requested by the ACLU for court admission fees, which are not reimbursable. *See Knauff v. Dorel Juvenile Grp., Inc.*, No. SA-08-CV-336-XR, 2010

---

[6] Defendants also question, without detail, a pair of meal expenses totaling $93.47. Docket No. 198 at 25. This Court finds these objections to be meritless. *See, e.g.*, *Gros v. City of New Orleans*, No. 12-2322, 2014 WL 3894371, at *5 (E.D. La. Aug. 8, 2014) (out of pocket expenses including meals recoverable as they are "normally billed to private client."); *Tindall v. Lit Refrigeration Co., Inc.*, 507 F.Supp. 341, 345 (N.D. Miss. 1980) (finding meal expense reasonable "and should be allowed').

WL 2545424, at *2 (W.D. Tex. June 21, 2010) (disallowing *pro hac vice* costs); *Smith v. Fresh Cut Floral & Catering, Inc.*, No. 3:07-CV-661-WHB-LRA, 2008 WL 4539630, at *2 (S.D. Miss. Oct. 7, 2008) (same). Therefore, the lodestar will include a total of $45,184.30 for expenses.

In sum, this Court finds that the lodestar here totals $496,859.25, as detailed below:

| COUNSEL | FEE TYPE | HOURS | RATE | FEE AMOUNT |
|---|---|---|---|---|
| SPLC | Attorney Work | 733.9 | $219 | $160,724.10 |
| SPLC | Attorney Travel | 55.0 | $109.50 | $6,022.50 |
| SPLC | Community Advocate Work | 475.5 | $35 | $16,642.50 |
| SPLC | Expenses | - | - | $32,468.89 |
| ACLU | Attorney Work | 1132.3 | $219 | $247,973.70 |
| ACLU | Attorney Travel | 69.5 | $109.50 | $7,610.25 |
| ACLU | Law Clerk Work | 39.2 | $100 | $3,920.00 |
| ACLU | Expenses | - | - | $12,715.41 |
| McDuff & Byrd | Attorney Work | 40.1 | $219 | $8,781.90 |
| *Total Award* | | | | $496,859.25 |

**2.     Lodestar Modification Using *Johnson* Factors**

This step requires the Court to discuss each of the *Johnson* factors and, in accord with that case, adjust the lodestar upward or downward based on that discussion. 488 F.2d at 717-19.

> The *Johnson* factors are: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to the acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the

16

attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Penthouse Owners Ass'n, Inc. v. Certain Underwriters at Lloyd's, London*, No. 1:07-CV-568-HSO-RHW, 2011 WL 6699447, at *3 (S.D. Miss. Dec. 21, 2011) (citation omitted). Many of these factors "usually are subsumed within the initial calculation of hours reasonably expended at a reasonable hourly rate.'" *Id*. at *4 (quoting *Hensley*, 461 U.S. at 434 n.9). Again, the "most critical" of the *Johnson* factors corresponds to factor (8), "the degree of success obtained." *Abner*, 541 F.3d at 377.

Here, each of the *Johnson* factors, except the fourth and sixth, are subsumed into the above discussion of the lodestar calculation. That discussion focuses on the eighth *Johnson* factor, noting the high degree of success obtained by Plaintiffs. The remaining two *Johnson* factors are not relevant to this case. In weighing all of these factors, this Court concludes that the lodestar should not be adjusted.

### 3. PLRA Limitations

The PLRA includes a provision that limits the award of attorney's fees in prison reform litigation. 42 U.S.C. § 1997e(d)(1). That provision has three requirements. The first bars awards from covering work that was not "directly and reasonably incurred" in proving actual rights violations. 42 U.S.C. § 1997e(d)(1)(A). Here, the entirety of Plaintiffs' work either (1) directly led to the Order's finding of "current and ongoing" rights violations at Walnut Grove or (2) defended that finding and the subsequent relief on appeal. The portion of this work dedicated to "fees-on-fees" is recoverable under the PLRA. *See Volk v. Gonzalez*, 262 F.3d 528, 536 (5th Cir. 2001). Thus, the lodestar award satisfies this threshold requirement of the PLRA limitation provision.

The PLRA fee limitation provision's second requirement states that awards shall only cover work that either is "proportionally related" to the relief ordered or is "directly and reasonably

17

incurred" in enforcing that relief. 42 U.S.C. § 1997e(d)(1)(B). Plaintiffs' efforts leading up to the Final Judgment were "proportionally related" to the Final Judgment's relief by being narrowly focused on enforcing the Decree's provisions. Plaintiffs' later efforts were "directly and reasonably incurred" in enforcing that relief by only encompassing appellate work and fees-on-fees work. The lodestar therefore satisfies the second requirement of the PLRA limitation provision.

Finally, the PLRA fee limitation provision caps the hourly rates within attorney's fees awards at 150 percent of the rate established by the CJA. For the reasons stated above, this Court will cap the relevant hourly rates at 150 percent of $146, which is the CJA hourly rate currently approved by the Judicial Conference. *See United States Courts FY 2017 Congressional Budget Summary* at 37 ("the maximum rate authorized in statute is $146 per hour"); *see also Carruthers v. Israel*, No. 76-06086-CV, 2017 WL 3531471, at *5–6 (S.D. Fla. Aug. 15, 2017) (calculating same rate). Furthermore, to compensate for delayed payment, this Court will use the currently approved CJA rate to all hours billed, rather than applying the approved CJA rates set at the time a given hour was billed. *See Walker,* 99 F.3d at 773. Therefore, this Court finds the PLRA to cap the relevant hourly rates at $219.

None of the hourly rates within the lodestar fee award exceed this cap. This Court therefore finds that the lodestar has satisfied the requirements of the PLRA.

IV. **Conclusion**

Plaintiffs' motion for attorneys' fees and costs is granted with regard to $496,859.25 of the attorney's fees and costs requested and denied with regard to $90,495.75 of that request. Defendants are ordered to pay to Plaintiffs $496,859.25.

**SO ORDERED**, this the ___ day of September, 2017.

s/ Carlton W. Reeves
                                          UNITED STATES DISTRICT JUDGE